IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STEWARD HEALTH CARE SYSTEM LLC, *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 24-90213 (CML)<br><br>(Jointly Administered) |
| THE COMMONWEALTH OF MASSACHUSETTS,<br><br>    Appellant. | Civil Action No. 4:25-cv-02825 |

**THE COMMONWEALTH OF MASSACHUSETTS' EMERGENCY MOTION FOR STAY PENDING APPEAL OF SETTLEMENT ORDER**

By and through the Executive Office of Health and Human Services of the Commonwealth of Massachusetts ("EOHHS") and the Attorney General of the Commonwealth of Massachusetts, the Commonwealth of Massachusetts ("Massachusetts," the "Commonwealth," or "Appellant") files this emergency motion (the "Motion") for a stay pending appeal of the *Order (I) Approving Settlement with FILO Secured Parties; (II) Authorizing and Directing Transfer of Assets in Connection Therewith; (III) Authorizing Amendment to FILO DIP Credit Agreement and Continued Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Approving Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; and (VI) Granting Related Relief* [Bankruptcy Docket No. 5035] (the "Settlement Order") entered by

---

[1] A complete list of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

the Bankruptcy Court June 2, 2025.[2] Massachusetts sought a stay of the Settlement Order from the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). On June 23, 2025, the Bankruptcy Court entered an order denying the stay request without holding a hearing. If a stay of the Settlement Order is not granted by this Court, the transfers and other terms of the settlement approved by the Settlement Order will become effective on July 14, 2025, without any further action, and there may be no effective way to unwind the Settlement Order in the future.

For the reasons set forth below, the Settlement Order should be stayed. Among other reasons, the Settlement Order is based on the legally and logically incorrect conclusion that, because the Bankruptcy Court can still decide not to confirm the reorganization plan on file and the settlement does not include every plan term, the settlement is not an impermissible *sub rosa* plan. But that misses the point. Given the settlement, the only plan that can be confirmed is one that implements its terms regarding creditor treatment and recognizes the transfer of all remaining estate assets, whether those key terms are embodied in the plan on file or a different one. That is the quintessential hall mark of a *sub rosa* plan, which on appeal is likely to result in the reversal of the Settlement Order.

<strong><u>PRELIMINARY STATEMENT</u></strong>

1. Too often in the *Steward* bankruptcy cases, the Bankruptcy Court has been forced to choose between the lesser of two evils. Most recently, the Bankruptcy Court chose to approve the FILO Settlement[3] believing it is the only (or at least the best) potential path to a recovery for

---

[2] Attached as **Exhibit A**.

[3] The terms and conditions between the Debtors, FILO Secured Parties, and Creditors' Committee as set forth in the Settlement Term Sheet attached to the Settlement Order as Exhibit 1 (the "FILO Settlement"). *See* **Exhibit A** at 38-140 of 140.

unsecured creditors,[4] even though the FILO Settlement, which would fund the plan process, renders *any* chapter 11 plan unnecessary.

2.  The prospect of recovery to general unsecured creditors, however, is illusory, as is the likelihood that the effective date (which will trigger potential distributions) under the pending plan, or any plan, will ever occur.[5] The Debtors' projected effective date and ranges of recovery to creditor classes are based on assumptions regarding (a) the outcome of disputed administrative expense claims and (b) the amount and timing of recovery on litigation claims. The former assumptions were made by Debtors' counsel, and the latter assumptions were made by Debtors' litigation counsel.[6] The Debtors' Chief Restructuring Officer John Castellano (the "CRO") and his team then plugged those assumptions into a financial model to estimate the effective date and recoveries to creditor classes.[7] But, those assumptions were never disclosed, and thus they remain entirely untested. The Debtors withheld, as privileged, all evidence supporting projected litigation recoveries and the ability to pay all administrative and priority claims in full. There was thus no evidence before the Bankruptcy Court to support findings underpinning the Settlement Order of the FILO Settlement's benefits to general unsecured creditors; there was simply an ask by the Debtors to "trust us," in the face of speculative results and uncertain alternatives.

---

[4] The Bankruptcy Court has been deprived of a meaningful opportunity to assess the alternative of conversion to chapter 7. The only liquidation analysis provided by the Debtors, thus far, assumes the FILO Settlement was approved and consummated. *See* Disclosures Statement [Bankruptcy Docket No. 5028 at 331 of 363].

[5] In rendering its decision, the Bankruptcy Court acknowledged the potential for administrative expense claims never being paid in full. "There's a very large number out there, an incredibly big number, a number of administrative claims. And it's been substantiated by the administrative claims bar date. It has been substantiated by Castellano's testimony and it may be larger than the Debtors think at this point." Transcript of May 30, 2025 Hearing at 19:1-6. The complete transcript of the May 30, 2025 hearing is attached as **Exhibit B**.

[6] "The question is, how much money will the litigations generate by a certain time period. The answer to that question is from counsel handling the particular litigations." Transcript of May 29, 2025 Hearing at 219:21-23. The complete transcript of the May 29, 2025 hearing is attached as **Exhibit C**.

[7] There was no evidence before the Bankruptcy Court that the CRO and his team engaged in any independent analysis of administrative claims to test the validity of the amounts asserted, even if there are legal objections that could be raised to certain of those claims.

3. The Commonwealth recognizes that when or whether the effective date will occur is an 11 U.S.C. § 1129 feasibility question, but that simply underscores the reality that the FILO Settlement is truly *sub rosa*, because the FILO Settlement determines distribution rights and procedures for unsecured creditors under *any* plan for the Debtors. Approval of this kind of case-outcome determinative settlement is not permissible in this or any other Circuit, and the Bankruptcy Court's legal analysis – as to whether the FILO Settlement constitutes a *sub rosa plan* – wrongly required that the FILO Settlement had to pre-determine "all the terms of [a hypothetical] plan."

> Here, unlike Braniff, which said here's how the -- we're going to get the proceeds in and then here's how we're going to pay it and here's who it's going to pay and here's exactly what's going to happen, right? That's what the court was against in Braniff. Dictated the terms of any plan.
>
> *Here we actually have a plan*. Could there be a hypothetical settlement that dictated all the terms of the plan? I don't know. But we don't have that here. But that's a hypothetical *because there is actually a plan here*. Do they complement one another? Yes, sure. But that doesn't mean it dictates the terms of the plan.

**Exhibit B** at 27:3-14 (emphasis added).

4. But, the FILO Settlement, approved independently of plan confirmation, *is* the plan that locks in the financial terms under which creditors will or will not recover without solicitation. The existence of an unconfirmed plan on the docket does not change the fact that recoveries (if any) to creditors are being dictated without a vote by pre-approval of the FILO Settlement independent of deciding confirmation. That the plan contains terms not specified in the FILO Settlement is not legally significant. It is hard to imagine any plan that would not contain terms in addition to the FILO Settlement.

5. Whether there is a better alternative to the FILO Settlement[8] is irrelevant to the decision to approve an outcome determinative settlement that extracts all remaining value that could go to creditors and eliminates any 11 U.S.C. § 1129 challenge to plan confirmation on that basis. Where no confirmable plan is available, the remedy is to convert the chapter 11 cases to chapter 7 – prior to the transfer of the Estates' remaining assets. No matter how creative the FILO Settlement might be, and no matter how much energy and resources the Estates expended on the mediation, the Bankruptcy Court must follow the Bankruptcy Code.[9]

## STATEMENT REGARDING FILING OF MOTION FOR STAY PENDING APPEAL IN THE DISTRICT COURT

6. On June 13, 2025, the Commonwealth filed its *Notice of Appeal* [Bankruptcy Docket No. 5123] and an *Emergency Motion for Stay of Settlement Order Pending Appeal* [Bankruptcy Docket No. 5126] requesting relief no later than 5:00 p.m. on June 24, 2025. On June 14, 2025, the Commonwealth amended its notice of appeal to include – as parties in interest to the appeal – the FILO Lenders,[10] FILO Bridge Secured Parties,[11] the FILO DIP Secured Parties,[12] the Official Committee of Unsecured Creditors, all parties who objected to the

---

[8] "And I would note for the record, and I sat there and listened very carefully, there is no -- no one presented a credible alternative to taking out the secured lender, someone putting up new money. There was no credible evidence in front of me to even hint that that was a possibility." **Exhibit B** at 14:25-15:6.

[9] *See, e.g., In re Sanchez Energy Corp.*, No. 23-20557, --- F.4th ---, 2025 WL 1540357 (5th Cir. May 30, 2025) (reversing bankruptcy court's "unapologetically purposive" interpretation of 11 U.S.C. §§ 550(a) and (d) and effectively rendering five years of post-confirmation litigation meaningless). The outcome in *Sanchez* may be repeated here if the Settlement Order is not stayed and the Bankruptcy Court continues to treat the FILO Settlement separately from the confirmation process.

[10] As defined in that certain Amended and Restated Intercreditor Agreement dated February 21, 2024.

[11] As defined in that certain Amended and Restated Intercreditor Agreement dated February 21, 2024.

[12] As defined in the *Final Order (I) Authorizing the Debtors to (A) Obtain New Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Provide Superpriority Administrative Expense Claims; (II) Granting Adequate Protection to Certain Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Bankruptcy Docket. No. 1538].

Settlement Motion,[13] and all parties who joined the Commonwealth's Objection[14] [Bankruptcy Docket No. 5130].

7. Two other groups of administrative creditors appealed the Settlement Order [Bankruptcy Docket Nos. 5128, 5161], which have been docketed with this Court as Case Nos. 25-cv-2829 and 25-cv-2901. Those administrative creditor groups also joined the Commonwealth's motion in the Bankruptcy Court for a stay pending appeal [Bankruptcy Docket Nos. 5162, 5171].

8. On June 13, 2025, the Commonwealth requested an emergency hearing on the matter and re-urged the request twice until June 20, 2025, when the Bankruptcy Court's case manager confirmed that the Bankruptcy Court was aware of the motion. *See* email chain with the Bankruptcy Court case manager.[15]

9. On June 23, 2025, the Bankruptcy Court denied the Commonwealth's motion for a stay pending appeal without a hearing and provided the following reasons for its ruling:

> There is no basis to grant a stay pending appeal here. The Commonwealth has not shown a likelihood of success on the merits. The Court stands on its reasoning and analysis stated on the record before entering the Order. There is also no mistake of law or erroneous factual finding. But there would be substantial harm staying the approval of a settlement agreement between the FILO Secured Parties, the Official Committee of Unsecured Creditors, and the Debtors. Staying the relief requested immediately halts these cases, including the plan confirmation hearing scheduled in July, and leads to an imminent conversion of these cases to chapter 7, where many unsecured creditors stand to receive nothing. Approving the settlement

---

[13] *Motion of Debtors for Entry of an Order (I) Approving Settlement with FILO Secured Parties; (II) Authorizing and Directing Transfer of Assets in Connection Therewith; (III) Authorizing Amendment to FILO DIP Credit Agreement and Continued Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Approving Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; and (VI) Granting Related Relief* [Bankruptcy Docket No. 4746] (the "Settlement Motion"), attached as **Exhibit D**.

[14] *The Commonwealth of Massachusetts' Objection to the Debtors' Solicitation Motion and Settlement Motion* [Bankruptcy Docket No. 4921] (the "Commonwealth's Objection"), attached as **Exhibit E**.

[15] Attached as **Exhibit F**.

ensures a plan confirmation hearing and will pay some creditors. Thus, public interest also weighs in favor of denying a stay pending appeal.

Bankruptcy Docket No. 5177 at 3.

## BACKGROUND

10. On May 6, 2024, Steward Health Care System LLC and 166 of its affiliated debtors (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court. During these chapter 11 cases, the Debtors transitioned hospital operations to new operators and liquidated their operational assets, which provided less value to the Estates than the Debtors expected.[16] The vast majority of the Estates' remaining assets are litigation claims.[17]

11. On April 28, 2025, the Debtors filed the Plan,[18] Disclosure Statement,[19] Solicitation Motion,[20] and Settlement Motion.[21] The FILO Settlement is the product of "several months of mediation led by the Honorable Marvin Isgur . . . ."[22] "The Plan incorporates the proposed [FILO] Settlement by and between the Debtors, the Creditors' Committee, and the FILO

---

[16] *See* Sections IV.I-K of the Disclosure Statement [Bankruptcy Docket No. 5028 at 53-73 of 363].

[17] *See* Section IV.M of Disclosure Statement [Bankruptcy Docket No. 5028 at 62 of 363].

[18] *Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and Its Affiliated Debtors* [Bankruptcy Docket No. 4743], the most recent revision of which was filed on May 28, 2025 [Bankruptcy Docket No. 5021] (the "Plan").

[19] *Disclosure Statement for Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and Its Affiliated Debtors* [Bankruptcy Docket No. 4744]. The Debtors filed a revised version of the Disclosure Statement the day before the hearing on the Settlement Motion [Bankruptcy Docket No. 4986]. The most recent revision of the Disclosure Statement was filed June 1, 2025 [Bankruptcy Docket No. 5028] (the "Disclosure Statement").

[20] *Motion of Debtors for Entry of Order (I) Scheduling Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Plan; (II) Conditionally Approving Disclosure Statement and Form and Manner of Notice of Conditional Disclosure Statement Hearing; (III) Establishing Solicitation and Voting Procedures; (IV) Establishing Administrative Expense Claims Consent Program Notice and Opt-Out Procedures; (V) Establishing Notice and Objection Procedures for Confirmation of Proposed Plan; (VI) Approving Notice Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases; and (VII) Granting Related Relief* [Bankruptcy Docket No. 4745] (the "Solicitation Motion").

[21] **Exhibit D**.

[22] *See* **Exhibit D** at 2 of 53.

Secured Parties . . . ."[23]  Other than Estate retained professionals, administrative expense creditors were not collectively represented in the mediation, as is apparent from the number of objections to the FILO Settlement by administrative creditors.

12. The Plan provides that the Effective Date will occur when allowed administrative expense claims (other than the preferred administrative expense claims held by Estate retained professionals) are paid in full, but neither the Plan nor the FILO Settlement provides any backstop or other mechanism to ensure that allowed administrative expense claims will be paid in full or that the Effective Date will ever occur.[24]  Several administrative expense creditors, including the Commonwealth, objected to the Settlement Motion on this basis. The original version of the Disclosure Statement made no estimate as to when the Effective Date may occur. During depositions taken on May 28, 2025 and at the May 29, 2025 hearing on the Settlement Motion and Solicitation Motion, the CRO testified that – based on projected recoveries on litigation claims and collections on accounts receivables – the Effective Date is reasonably likely to occur in early 2027.[25]

13. The Debtors' originally estimated the amount of allowed administrative expenses at $127 million.[26]  This estimate was revised and currently sits at $93 million.[27]  This estimate excludes several categories of administrative expense claims, including disputed administrative expense claims, such as the Commonwealth's approximately $24 million in administrative

---

[23] Disclosure Statement [Bankruptcy Docket No. 5028 at 88 of 363].

[24] *See* Disclosure Statement [Bankruptcy Docket No. 5028 at 106-07 of 363].

[25] The Disclosure Statement was subsequently revised to include the following statement. "Based on the Debtors' reasonable estimates, the Debtors are estimating that the Effective Date is reasonably likely to occur in early 2027, although the Effective Date may reasonably or in fact occur earlier or later than early 2027." Disclosure Statement [Bankruptcy Docket No. 5028 at 26 of 363].

[26] *See* Bankruptcy Docket No. 4744 at 86 of 332.

[27] *See* Disclosure Statement [Bankruptcy Docket No. 5028 at 96 of 363].

expense claims.[28] The CRO was unable to provide any estimate of the total amount of disputed administrative expense claims.[29] However, the Debtors acknowledge that if $93 million proves to be an under-estimate or they are otherwise unable to reach agreements as to the treatment of administrative expense claims, the Effective Date may never occur.[30] Additionally, the day before the hearing on the Settlement Motion and Solicitation Motion, the Debtors filed revised projected recoveries to creditor classes.[31] The estimated ranges of allowed amounts for each class were not materially revised; the General Unsecured Claims class remained at approximately $1.4 – $2.3 billion. However, the estimated recovery for the General Unsecured Claims class was revised from a range of 0% – 23.6% to a range of 3.9% – 21.6%.[32]

14. No evidence supporting the Debtors' estimated Effective Date or upward revision to projected recoveries to general unsecured creditors was offered at the May 29th hearing, and counsel for the Debtors objected on the basis of privilege, during cross-examination, preventing the CRO from providing any details regarding the Debtors' projected litigation recoveries.[33]

15. On May 30, 2025, the Bankruptcy Court held a hearing, articulated the bases for its decision on the record, and entered the Settlement Order.

---

[28] *See* Disclosure Statement at 97-98 of 363. At the hearing, counsel for the estate of a person who died at a Steward Massachusetts hospital post-petition noted that the estate's wrongful death claim of $25 million was also not included in the CRO's calculations. The CRO only allotted a total of $18 million for all post-petition medical malpractice and worker's compensation claims based on an actuarial analysis. *See* **Exhibit C** at 242:9-243:4. It is unclear how many of these claims actually exist.

[29] *See* **Exhibit C** at 240:18-241:3.

[30] *See* Disclosure Statement [Bankruptcy Docket No. 5028 at 106-07 of 363].

[31] *See* Disclosure Statement [Bankruptcy Docket No. 4986 at 26-29 of 359]. The Debtors' estimated allowed amount of Priority Claims ($360,000 - $700,000) also plainly excludes the Commonwealth's approximate $32 million Priority Claim No. 11796.

[32] *See* "Redline – Disclosure Statement" [Bankruptcy Docket No. 4987-2 at 332 of 447].

[33] *See* **Exhibit C** at 219:19-221:3.

**RELIEF REQUESTED**

16. The Commonwealth seeks entry of an order, substantially in the form attached hereto (the "Proposed Order"),[34] staying the Settlement Order pending appeal.

**BASIS FOR RELIEF REQUESTED**

**A.    Legal Standard**

17. A party seeking a stay pending appeal from a bankruptcy court order may be filed in the court where the appeal is pending if a motion has already been made in the bankruptcy court. FED. R. BANKR. P. 8007(b). The party seeking a stay pending appeal must state whether the bankruptcy court has ruled upon the motion, and if so, state any reasons given for the ruling. FED. R. BANKR. P. 8007(b)(2). Additionally, the party seeking a stay pending appeal must include with the motion affidavits or other sworn facts subject to dispute.[35] FED. R. BANKR. P. 8007(b)(3)(B).

18. The factors governing a court's equitable discretion to grant a stay are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Although no factor is dispositive, the likelihood of success and irreparable injury factors are "the most critical." *Nken*, 556 U.S. at 434.

19. The standard of appellate review depends on whether the decision of a bankruptcy court is based on a legal conclusion or a factual finding. *See In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000). A bankruptcy court has broad discretion over a factual finding, and a

---

[34] Attached as **Exhibit G**.

[35] The Commonwealth does not dispute any specific factual findings of the Bankruptcy Court, only that the Bankruptcy Court did not have a sufficient record to support entry of the Settlement Order. Therefore, the Commonwealth has not included any affidavit or sworn statements supporting facts subject to dispute with this Motion.

4919-1930-1199

factual finding is subject to review only for clear error. *See In re Burkett*, 279 B.R. 816, 817 (Bankr. W.D. Tex. 2002). A finding of fact is clearly erroneous only if, on the entire evidence, the reviewing court "is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, (1948). In contrast, a bankruptcy court's conclusions of law are reviewed *de novo*. *In re Nat'l Gypsum Co.*, 208 F.3d at 504. Thus, it is easier for a movant to satisfy the first element of a stay with respect to a conclusion of law. *In re Tex. Equip. Co., Inc.*, 283 B.R. 222, 227 (Bankr. N.D. Tex. 2002).

20. "[T]he movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981).

**B.  Likelihood of Success on the Merits**

21. The Settlement Order rests upon multiple conclusions of law on serious legal questions with the potential to impact how similarly challenging bankruptcy cases proceed and how administrative creditors, other than Estate professionals, account for risk of non-payment of administrative expense claims. These questions include the following:

   a. whether the filing of a chapter 11 plan – that has not yet been confirmed and may not be confirmed – prevents the FILO Settlement from being a *sub rosa* plan given that it predetermines recoveries for creditors not only under the filed plan but *any* plan and it does not ensure payment of administrative expense and priority claims in full;

   b. whether a settlement that transfers substantially all remaining estate assets – outside of the plan confirmation process and without ensuring payment of administrative expense and priority claims in full – is permissible under the Bankruptcy Code; and

   c. whether the lack of a better alternative, other than conversion, is a proper basis for approving a settlement that dictates the financial terms of recovery to creditors.

22. The Bankruptcy Court's answers to these questions were not correct and accordingly there is a strong likelihood that the Settlement Order will be reversed on appeal.

23. *The FILO Settlement is a sub rosa plan*. Although the Bankruptcy Court's observation that *Braniff* did not involve a case where a plan was on file was correct, its reliance on this fact to limit the substantive ruling of *Braniff* was incorrect. *Braniff* instructs that where the terms of a settlement or sale predetermine creditor recoveries and treatment, the settlement or sale is a *sub rosa* plan that can only be approved together with plan confirmation, after approval of a disclosure statement, solicitation, and satisfaction of the section 1129's confirmation requirements. Similarly, the Bankruptcy Court's observation that the FILO Settlement does not pre-determine all plan terms is accurate but misses *Braniff's* important instruction regarding when a settlement or sale is a *sub rosa* plan.

24. There is no legitimate basis to dispute that the FILO Settlement predetermines these central creditor-treatment issues not only for the plan on file but for any plan that might be filed, independent of the plan confirmation process. Moreover, there can be no legitimate basis to dispute that any settlement which predetermines creditor treatment and recoveries likely will not cover "all of the terms of [a] plan," making this observation by the Bankruptcy Court irrelevant to the proper application of *Braniff*. Transactions circumventing the Bankruptcy Code's procedural safeguards are not permissible even in 'rare cases,' and courts "cannot 'alter the balance struck by the statute.'" *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017) (quoting *Law v. Siegel*, 571 U.S. 415, 416 (2014)).

25. If the contrary conclusion were legally correct, then debtors will be able to transfer substantially all estate assets to trusts with predetermined creditor treatment without the protections of the plan confirmation process so long as a plan, even an unconfirmable plan, has

been filed on the docket, and those debtors can demonstrate that any plan has or will have terms in addition to those contained in the settlement.

26. Because the Bankruptcy Court wrongly distinguished *Braniff* and failed to apply it to the FILO Settlement properly, there is a strong likelihood that the Settlement Order will be reversed on appeal.

27. *Payment of administrative expense and priority claims*. The FILO Settlement transfers the Estates' remaining assets to the Litigation Trust and provides the Estate with additional funding for a plan process, without any mechanism to ensure that administrative expense claims are paid in full (or even to make that potential more likely), making that plan process speculative at best.[36] To the contrary, the evidence before the Bankruptcy Court demonstrated that the likelihood of full recovery to administrative and priority creditors (other than Estate professionals who will be paid regardless), and any recovery to unsecured creditors is highly speculative, making any finding that the FILO Settlement is in the best interest of creditors factually insupportable.

28. One need look no further than the Plan to understand that the supposed benefits of the FILO Settlement are speculative and likely illusory. The Effective Date of the Plan is conditioned on paying the FILO Lenders and allowed administrative expense claims in full. These relatively innocuous Effective Date conditions, however, are undermined by the fact that payment in full here requires billions of dollars of litigation recoveries from claims that have not been described or assessed on the merits or for collectability if meritorious. Another bankruptcy court

---

[36] Indeed, there is no requirement that the FILO lenders fund any further litigation following satisfaction of their own claims.

in this Circuit refused to confirm a plan of reorganization due to a speculative future effective date, holding:

> The Debtor's ability to satisfy its financial obligations under the Plan, and the payment requirements of § 1129 is not just speculative, but is so contingent on factors beyond its control (such as resolution of appeal of the confirmation order, implementation of the effective date, litigious claims by and against SBC, the assumption of allegedly expired contracts that will most likely spur further litigation, *and collection of enough funds to pay administrative expenses*) that completion of the Plan is unlikely.

*In re Premiere Network Services, Inc.*, No. 04-33402-HDH-11, 2005 WL 6443624, at *6 (Bankr. N.D. Tex. July 1, 2005) (emphasis added).

29. Bankruptcy courts in other Circuits have similarly refused to confirm plans with speculative future effective dates. *See In re Krueger*, 66 B.R. 463, 465 (Bankr. S.D. Fla.1986) (effective date four months after confirmation is unreasonable); *In re Potomac Iron Works, Inc.*, 217 B.R. 170, 173 (Bankr. D. Md. 1997) (effective date should "be set forth in the plan with specificity"; one-year delay between confirmation and effective date precluded confirmation); *In re Vagu*, 132 A.F.T.R.2d 2023-5297 (Bankr. D.P.R. July 21, 2023) (dismissing case because "all risk of failure has been shifted to tax authorities and unsecured creditors and more than one year later from the order confirming plan becoming final, the effective date is yet to occur").

30. Because case law makes clear that the speculative benefits of future recoveries are insufficient to support a finding of plan feasibility, these cases demonstrate that similarly speculative benefits are insufficient to support a finding that the FILO Settlement is in the best interest of the Estate and its creditors.

31. *No "credible alternative" as a basis for approval of FILO Settlement.* The Bankruptcy Court approved the FILO Settlement in significant part because without it, the Debtors lack the ability even to try to confirm a plan of liquidation/reorganization. Where a debtor is unable to propose a feasible, confirmable plan or demonstrate that it can effectuate substantial

consummation of a confirmed plan, the alternative is conversion or dismissal.  11 U.S.C. §§ 1112(b)(2)(A) and (b)(4)(M).

32.    The order of operations may prove to be the critical misstep here.  For the reasons stated above and in the Commonwealth's Objection, the FILO Settlement should not have been advanced, and the Bankruptcy Court should not have approved, the transaction outside of the procedural safeguards of the plan confirmation process.  However, the Bankruptcy Court approved the Settlement and deferred the Effective Date issue to the confirmation hearing, stating:

> I want to hear from voters and voters will talk.  And again, I can hear briefing on the effective date.  And it's been done in other cases.  And I read the cases Mr. Keach referred me to, and I know that the Debtors are going to cite cases like Sears and Pier One and other cases.  So you go both ways.  And I think courts have to look at this and make an informed decision about how it works.  And I've read Premier, and they're right, it can go both ways.  But I need to hear what the evidence is.  And I don't have -- yesterday wasn't the day for me to say, you know, on the spot you can never do this.

**Exhibit B** at 35:9-19.

33.    The Bankruptcy Court should have resolved the Effective Date issue and the ability to confirm the Plan *before* (or at least contemporaneously with) considering approval of the FILO Settlement, *i.e.*, before the Estates' remaining assets are exchanged for Class B interests, and the failure to have done so is strongly likely to be reversable error.

34.    If (when) the Bankruptcy Court determines it cannot confirm the Plan because the likelihood of the occurrence of the Effective Date is too remote and it must convert the case or send parties back to the drawing board on a confirmable plan, doing so will not unwind the FILO Settlement, the work of the Litigation Trust to liquidate the FILO Lenders' collateral without the need for stay relief or further court order, and the fixed distribution recoveries/mechanisms for all remaining creditors.  No one, not creditors or a chapter 7 Trustee, will have the ability or opportunity to negotiate any different, much less a better, settlement with the FILO Lenders.

15

### C. Irreparable Injury Absent a Stay

35. Absent a stay of the Settlement Order, the Estates' remaining assets will be transferred to the Litigation Trust and creditor treatment predetermined, whether or not the Plan (or any plan) is confirmed. "[M]aintenance of the status quo is an important consideration in granting a stay." *Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978). Additionally, if the FILO Settlement is consummated and the Litigation Trust begins to incur expenses and dissipate funds, but the Settlement Order is later reversed, then expenditures of Litigation Trust may be a complete waste, an outcome all potential holders of interest in the Litigation Trust would benefit from avoiding.

### D. Substantial Injury to Other Parties

36. If this Court grants the stay, the risk of injury to other parties lies primarily with the parties who are certain to benefit from the FILO Settlement, *i.e.*, the FILO Lenders and the Debtors' Estate retained professionals, and that injury is merely a delay in receiving recoveries through the Litigation Trust. A stay will not alter their fundamental legal rights; they will be unchanged with the FILO Lenders retaining their interests in their collateral and professionals being entitled to administrative expense claims against the Estate to be paid *pro rata* with other administrative expense creditors. Assuming the FILO Lenders opt not to wait for resolution of the appeal and are permitted to exercise remedies on their collateral,[37] the other parties will be in no worse position than if the Bankruptcy Court were to convert the case, an outcome requested by multiple administrative creditors and the Office of the United States Trustee and an outcome likely to have the least impact on the largest constituency of stakeholders – administrative, priority, and

---

[37] Under the paragraph 7(e) of the FILO DIP Order, the FILO Lenders are required to obtain permission from the Bankruptcy Court to exercise remedies upon an Event of Default. *See* Bankruptcy Docket No. 1538 at 36 of 200.

general unsecured creditors, whose recovery through the FILO Settlement and/or Plan remains speculative, at best.

### E. Public Interest

37. The urgency of these chapter 11 cases has subsided, having progressed beyond the potential public health crisis phase, thanks in no small part to administrative creditors who provided services to the Debtors and have not been paid. But there will be more hospital bankruptcy cases, which will be influenced by the outcome of these chapter 11 cases. It is not in the public interest for administrative creditors' concerns and interests to be ignored, least of all the taxpayers of the Commonwealth. It is not in the public interest to de-incentivize third parties from doing business with or continuing to do business with hospital systems in future chapter 11 cases, exacerbating the risk of inadequate care to patients or hospital shutdowns in such cases. It is not in the public interest to de-incentivize public entities like the Commonwealth, or any vendor or service provider, from advancing funds or extending credit to distressed health care debtors when their lenders will not.[38] As one court observed when facing a similar challenge: "To authorize a sale over the objection of unpaid administrative creditors would be to sanction a transaction that harvests the fruits of their labor while disclaiming its costs. Courts have long and consistently

---

[38] "Because the FILO DIP did not permit the funding of operations for the Steward Massachusetts Hospitals starting August 1, the Debtors were forced to obtain additional funding to keep the Steward Massachusetts Hospitals open until the sales were completed or the hospitals were closed." Bankruptcy Docket 3393 at 7 of 64. *See also, Emergency Motion of Debtors for Entry of an Order (I) Approving (A) Funding from the Commonwealth of Massachusetts for the Planned Transition and Sale of Massachusetts Hospitals, (B) the Closure of Carney Hospital and Nashoba Valley Medical Center, and (C) Procedures Related to Facility Closures; and (II) Granting Related Relief* [Bankruptcy Docket No. 1711]; *Order Approving Funding from the Commonwealth of Massachusetts for the Planned Transition and Sale of Massachusetts Hospitals and Granting Related Relief* [Bankruptcy Docket No. 1855]; *Emergency Motion of Debtors for Entry of an Order (I) Approving Additional Funding from the Commonwealth of Massachusetts for the Planned Transition and Sale of Massachusetts Hospitals; and (II) Granting Related Relief* [Bankruptcy Docket No. 2286]; *Order (I) Approving Additional Funding from the Commonwealth of Massachusetts for the Planned Transition and Sale of Massachusetts Hospitals; and (II) Granting Related Relief* [Bankruptcy Docket No. 2345].

rejected that proposition." *In re Silver Airways LLC*, No. 24-23623-PDR, 2025 WL 1436258, at *7 (Bankr. S.D. Fla. May 19, 2025).[39]

38. The negative public interest implications here are multiplied. The preference of one type of administrative creditor over all others creates the moral hazard that future cases can be run entirely for the benefit of professionals at the expense of other creditors who advance credit without any protection other than receiving an administrative expense priority. It also is in the public interest to minimize expenditure of judicial and estate resources, where appropriate to avoid any unnecessary litigation that may be reversed or unwound in the event of a successful appeal of the Settlement Order.

### F. Balance of Equities (the Latter Three Factors Combined)

39. The Plan is one of liquidation, and the Estates' remaining assets are primarily litigation claims. All that is left to accomplish in these chapter 11 cases is pursue litigation, but no party stands to benefit from litigation to unwind the creation of the Litigation Trusts, avoid payments made or expenses incurred by those Trusts which would be unnecessary or wasteful in the event the Settlement Order is reversed on appeal, and an outcome such as that in *In re Sanchez* should be avoided at all costs. Thus, the balance of the equities weighs heavily in favor of a stay.

### BASIS FOR EMERGENCY CONSIDERATION

40. The Commonwealth requests that the Motion be considered on an emergency basis. The Settlement Order provides that the Litigation Trust will be established and substantially all of the Estates assets will be deemed transferred to the Litigation Trust on July 14, 2025, whether or not an order confirming the Plan is entered.[40] Absent emergency consideration, and in the event

---

[39] In *Silver Airways*, the bankruptcy court only overcame this concern after administrative expense creditors consented to the proposed sale and their treatment as a result. *In re Silver Airways*, 2025 WL 1436258, at *7. No similar inference can be – or for that matter was – drawn here.

[40] *See* **Exhibit A** at 11.

this Court denies the Motion, the Commonwealth will not have sufficient time to seek a stay of the Settlement Order pending appeal in the United States Court of Appeals for the Fifth Circuit.

## **NOTICE**

41. The Commonwealth will serve this Motion on counsel for all parties in interest identified in the *Amended Notice of Appeal* [Docket No. 2], which includes all parties that supported, objected to, or joined objections to the Settlement Motion.

## **CONCLUSION**

42. For the foregoing reasons, the Commonwealth respectfully requests that the Court stay the Settlement Order pending resolution of any and all appeals and grant such other and further relief as the Court deems appropriate.

*[remainder of page intentionally left blank]*

Dated: June 23, 2025
     New York, New York

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS,
By its attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

By:    */s/ Hugh M. McDonald*
    Hugh M. McDonald
    N.Y. Bar No. NY2420974
    S.D. Tex. Fed. No. 924315
    Special Assistant Attorney General

Andrew M. Troop
Mass. Bar No. MA547179
S.D. Tex. Fed. No. 3089813
Special Assistant Attorney General

PILLSBURY WINTHROP SHAW PITTMAN LLP
Andrew V. Alfano
N.Y. Bar No. NY5525241
S.D. Tex. Fed. No. 3879712
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1000
Fax: 212-858-1500

William D. Wood
Tex. Bar No. 21916500
S.D. Tex. Fed. No. 2002
L. James Dickinson
Tex. Bar No. 24105805
S.D. Tex. 3611267
609 Main Street, Suite 2000
Houston, TX 77002
Tel: 713-276-7600
Fax: 713-276-7673

## CERTIFICATE OF SERVICE

    I certify that on June 23, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States District Court for the Southern District of Texas and to be emailed to counsel for all parties in interest identified in Docket No. 2.

                                  */s/ Hugh M. McDonald*
                                    Hugh M. McDonald