IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ----------------------------------------------§ | |
| **COMMONWEALTH OF** § | |
| **MASSACHUSETTS,** § | |
| § | |
| **Appellant,** § | |
| § | **Case No. 25-02825** |
| **v.** § | |
| § | |
| **STEWARD HEALTH CARE** § | |
| **SYSTEM LLC,** *et al.*, § | |
| § | |
| **Appellees,** § | |
| § | |
| ----------------------------------------------§ | |
| **In re:** § | **Chapter 11** |
| § | |
| **STEWARD HEALTH CARE** § | **Case No. 24-90213 (CML)** |
| **SYSTEM LLC,** *et al.*, § | |
| § | **(Jointly Administered)** |
| **Debtors.**[1] § | |
| ----------------------------------------------§ | |

**RESPONSE IN OPPOSITION TO**
**THE COMMONWEALTH OF MASSACHUSETTS'**
**EMERGENCY MOTION FOR STAY PENDING APPEAL**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is: 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204.

## **Table of Contents**

Summary of Argument ................................................................................................. 1

Background .................................................................................................................. 4

Statement of the Issue ................................................................................................. 8

Argument ..................................................................................................................... 9

   I.      The Stay Request Should Be Denied. ................................................. 9

      A.     The Commonwealth Is Not Likely To Succeed on the Merits. ...................... 10

         a.     The FILO Settlement is in the Best Interests of the Debtors and their Estates ............................................................................................... 10

         b.     The FILO Settlement is Not a "Sub Rosa" Plan ......................... 14

         c.     The Commonwealth's Confirmation Objections are Misplaced and Have No Relevance to the Appeal ...................................................... 15

      B.     The Commonwealth Has Not Proven Irreparable Harm. .............................. 16

      C.     Staying the FILO Settlement Order Will Cause Substantial and Irreparable Harm to Other Parties .................................................................................... 19

      D.     Public Interest Weighs Strongly Against a Stay. ........................................... 20

      E.     If the Court Issues a Stay, the Commonwealth Must Post a Bond Sufficient to Protect All Parties in Interest........................................................................ 21

Conclusion ................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACC Bondholder Group, Appellants v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*,
361 B.R. 337 (S.D.N.Y. 2007) ................................................................... 22

*Andritz Sundwig GmbH v. U.S.*,
No. 18-02061 (NFA), 2018 WL 3218006 (S.D. Tex. July 2, 2018) ........................... 18

*Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*,
875 F.2d 1174 (5th Cir. 1989) ................................................................. 18

*In re Barrow Shaver Res. Co.*,
No. 24-33353 (ARP), 2025 WL 685513 (Bankr. S.D. Tex. Mar. 3, 2025) ................................................................................. 9

*Bond Pharmacy, Inc. v. AnazaoHealth Corp.*,
815 F. Supp. 2d 966 (S.D. Miss. 2011) ....................................................... 18

*In re Braniff Airways, Inc.*,
700 F.2d 935 (5th Cir. 1983) ................................................................. 14

*Bullard v. Blue Hills Bank*,
575 U.S. 496 (2015) .......................................................................... 21

*Calsep A/S v. Intelligent Petroleum Software Sols., LLC*,
No. 19-01118 (DHP), 2022 WL 17722665 (S.D. Tex. Aug. 25, 2022) ...................... 22

*Cantu v. Int'l Bank of Com.*,
No. CIV.A M-11-28 (RC), 2011 WL 10620314 (S.D. Tex. Aug. 5, 2011), *aff'd sub nom. In re Cantu*, 464 F. App'x 385 (5th Cir. 2012) ........................ 21

*Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*,
864 F.3d 344 (5th Cir. 2017) ................................................................. 10

*In re Crutcher Res. Corp.*,
72 B.R. 628 (Bankr. N.D. Tex. 1987) ......................................................... 10

*de la Fuente v. DCI Telecomms., Inc.*,
269 F. Supp. 2d 237 (S.D.N.Y. 2003) ......................................................... 22

*In re Dernick*,
   Nos. 18-32417 & 18-32494 (EVR), 2019 WL 236999 (Bankr. S.D. Tex.
   Jan. 16, 2019) ........................................................................................ 9

*DFW Metro Line Servs. v. Sw. Bell Tel. Co.*,
   901 F.2d 1267 (5th Cir. 1990) ............................................................... 18

*Div. 80, LLC v. Garland*,
   No. 22-CV-148 (JVB), 2022 WL 3648454 (S.D. Tex. Aug. 23, 2022) ...... 18

*In re First S. Savs. Ass'n*,
   820 F.2d 700 (5th Cir. 1987) ........................................................ 9, 11, 17

*Matter of Forty-Eight Insulations, Inc.*,
   115 F.3d 1294 (7th Cir. 1997) ............................................................... 17

*In re Gulf Coast Oil Corp.*,
   404 B.R. 407 (Bankr. S.D. Tex. 2009) .................................................... 11

*In re Idearc Inc.*,
   423 B.R. 138 (Bankr. N.D. Tex. 2009), *subsequently aff'd sub nom.*
   *Spencer Ad Hoc ZEquity Comm. v. Idearc, Inc. (In re Indearc, Inc.),* 662
   F.3d 315 (5th Cir. 2011) ........................................................................ 11

*Kearney v. Unsecured Creditors Comm.*,
   987 F.3d 1284 (10th Cir. 2021) ............................................................. 21

*Long v. Robinson*,
   432 F.2d 977 (4th Cir. 1970) ................................................................. 18

*In re Metiom, Inc.*,
   318 B.R. 263 (S.D.N.Y. 2004) ................................................................ 21

*Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium*
   *Operating LLC)*,
   478 F.3d 452 (2d Cir. 2007) ................................................................... 17

*Mounce v. Wells Fargo Home Mortg. (In re Mounce)*,
   2008 Bankr. LEXIS 4797 (Bankr. W.D. Tex. July 10, 2008) .................... 21

*In re MTE Holdings, LLC*,
   No. 19-12269, 2021 WL 4203339 (Bankr. D. Del. Sept. 15, 2021) ........... 17

*Nken v. Holder*,
   556 U.S. 418 (2009) ..................................................................... 9, 10, 16

*Off. Comm. of Unsecured Creditors v. Osherow (In re Age Refin. Inc.)*,
  801 F.3d 530 (5th Cir. 2015) ................................................................................................ 11

*Plaquemines Par. v. Chevron U.S., Inc.*,
  84 F.4th 362 (5th Cir. 2023) ................................................................................................. 16

*Poplar Grove Planting & Ref. Co. Inc. v. Bache Halsey Stuart Inc.*,
  600 F.2d 1189 (5th Cir. 1979) ......................................................................................... 21, 22

*Preston Wood & Assocs., LLC v. Cameron Architects, Inc.*,
  No. 16-01427 (DH), 2019 WL 2904297 (S.D. Tex. Apr. 26, 2019) .......................... 22

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015) ........................................................................................... 16, 17

*Ron Hoover Co., Inc. v. Yamaha Motor Corp., USA*,
  No. 18-CV-205 (HT), 2018 WL 7253954 (S.D. Tex. Dec. 3, 2018) .......................... 18

*In re Scotia Dev. LLC*,
  2008 Bankr. LEXIS 5127 (Bankr. S.D. Tex. July 15, 2008) ...................................... 22

*Tex. Democratic Party v. Abbott*,
  961 F.3d 389 (5th Cir. 2020) .................................................................................................. 9

*In re Texas Equip. Co., Inc.*,
  283 B.R. 222 (Bankr. N.D. Tex. 2002) ................................................................................ 21

*The Cadle Co. v. Moore (In re Moore)*,
  608 F.3d 253 (5th Cir. 2010) ................................................................................................ 10

*Tucker Anthony Realty Corp. v Schlesinger*,
  888 F.2d 969 (2d Cir. 1989) .................................................................................................. 16

*In re Turki*,
  652 B.R. 474 (Bankr. D.S.C. 2023) ..................................................................................... 18

*Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham
  Lambert Grp., Inc.)*,
  134 B.R. 499 (Bankr. S.D.N.Y. 1991) .................................................................................. 11

*Vine v. PLS Fin. Servs., Inc.*,
  No. 4:18-CV-00450 (ALM), 2019 WL 4257108 (E.D. Tex. Sept. 9,
  2019) ......................................................................................................................................... 16

*In re Wellington*,
  631 B.R. 833 (Bankr. M.D.N.C. 2021) ................................................................................ 18

iv

*Yucaipa Corp. Initiatives Fund, ILP v. Piccadilly Rests., LLC*,
No. 14-00609 (RFD), 2014 WL 1871889 (W.D. La. May 6, 2014)............................ 9

**Statutes**

11 U.S.C. § 363(b) ............................................................................................ 10

Bankruptcy Code § 363 ................................................................................... 10

**Rules**

Bankruptcy Rule 9019 ............................................................................... 10, 17

Fed. R. Bankr. P. 8007(c) ................................................................................ 21

Appellee Steward Health Care System LLC and its affiliated debtors, as debtors and debtors in possession in the above-captioned chapter 11 cases ("**Debtors**"), respectfully submit this Response in Opposition to the Commonwealth's emergency motion for a stay pending appeal. (Doc. No. 4) ("**Motion**").[2]

## Summary of Argument

1.      This Court should deny the motion for a stay of the Debtors' settlement with their secured lenders ("**FILO Settlement**").  The bankruptcy court correctly denied a stay and had ample power to approve the FILO Settlement, which provides critical protections to the Debtors' estates and creditors without causing any irreparable harm to the Commonwealth.  By contrast, staying the settlement would cause grave disruption to the bankruptcy process.  As the bankruptcy court explained, a stay would "immediately halt[] these cases, including the plan confirmation hearing scheduled in July, and lead[] to an imminent conversion of these cases to chapter 7, where many unsecured creditors stand to receive nothing."[3]  A stay is thus unwarranted.

2.      The background vividly illustrates the point.  Before the settlement, the Debtors faced a crisis:  The Debtors' senior secured debtor-in-possession financing facility ("**DIP Loan**")—a loan from the FILO Secured Parties ("**FILO Lenders**") and authorized by an order of the bankruptcy court[4] ("**DIP Financing Order**")—had come due, yet the Debtors

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the term sheet attached to the FILO Settlement Order (as defined herein).

[3] Order Denying Stay (as defined below) at p.3.

[4] *See* Bankr. Doc. No. 1538.

had no way to repay it.  The Debtors needed cash to administer the chapter 11 cases, yet they would have no right to use the cash needed to do so because it was the FILO Lenders' collateral.  The Debtors thus needed financing to monetize litigation and other assets that, in time, will generate value sufficient to repay the FILO Lenders and provide recoveries to administrative expense, priority, and unsecured creditors.  But the Debtors had no other source of financing and time was quickly running out.  The FILO Lenders had the clear right to foreclose on substantially all of the Debtors' assets, conduct auctions and obtain outright ownership of such assets free and clear via credit bid—leaving all other creditors (including the Commonwealth) with nothing.[5]

3.      The FILO Settlement averted this disaster.  The Debtors, Creditors' Committee and FILO Lenders worked together to reach that agreement, in a process overseen by Judge Isgur acting as mediator.  The settlement preserves significant value for creditors and represents a critical and necessary step toward a chapter 11 plan that pays administrative and priority creditors in full and provides meaningful recoveries for unsecured creditors. Under the settlement, the estates' litigation and other assets will be transferred to a litigation trust where interests will be granted to the FILO Lenders *and* the estates.  Rather than run out of money immediately, the FILO Lenders will provide litigation and other funding.  Rather than facing down the barrel of an imminent DIP Loan maturity date, litigation proceeds will repay the FILO Lenders as they are realized.  Rather than the FILO Lenders prevailing at auction with a non-cash credit bid now, litigation and other assets

---

[5] *See* May 30 Ruling Transcript, Bankr. Doc. No. 5044, at 25:22–25.

will be funded so their true value can be realized, repay the FILO Lenders, and then yield significant benefits to the estates (with recoveries to creditors dictated by a separate proposed chapter 11 plan that the bankruptcy court will consider at a July 14 confirmation hearing).

4. The Commonwealth's request for a stay thus fails. A stay is an extraordinary remedy that is never available as a matter of right, and the Commonwealth cannot make the requisite showing. First, the Commonwealth is not likely to succeed on the merits. As the bankruptcy court determined, the FILO Settlement has a valid business justification, is fair and equitable, and in the best interests of the estates: it averted disaster and permitted the Debtors to move forward with a chapter 11 plan. Nor is the FILO Settlement a *sub rosa* plan. It respects the FILO Lenders' priority and rights under the DIP Financing Order while preserving enormous upside value for the estates. The chapter 11 plan, not the FILO Settlement, dictates how that value is divvied up.

5. Nor can the Commonwealth demonstrate irreparable harm, especially because the Commonwealth "does not dispute **any** specific findings of the bankruptcy court."[6] The Commonwealth speculates that, absent a stay, the Litigation Trustee could in theory dissipate estate assets—but the estates will lose all of its assets if a stay is granted. To the extent the Commonwealth is acting in its capacity as a creditor (and not for some other motive), the FILO Settlement *benefits* the Commonwealth (as it does all other creditors). The Commonwealth also argues it will be irreparably harmed because the settlement alters

---

[6] *See* Motion fn. 35.

distribution priorities, yet the settlement *preserves* distribution priorities by enabling distribution to be made at all from future litigation recoveries in accordance with the proposed chapter 11 plan.

6.    Conversely, a stay will irreparably harm the Debtors and all other creditors. If the FILO Settlement Order is stayed, then the benefits of the settlement (and the order approving it) will be irretrievably lost: The DIP Loan will mature on July 16, 2025,[7] and there is no dispute that the Debtors will be unable to repay the DIP Loan. The FILO Lenders have made clear they will not extend maturity any further without the FILO Settlement in place. Upon maturity of the DIP Loan, the Debtors will lose their ability to access cash collateral and the FILO Lenders will have the right to foreclose on their collateral, which makes up substantially all remaining assets of the estate, and credit bid their claim at a foreclosure auction. The resulting chapter 7 liquidation would yield essentially nothing for any remaining creditor constituent.[8] The whole point of a chapter 11 process is to prevent such a damaging liquidation. Staying the FILO Settlement Order would have essentially the same effect as finding for the Commonwealth on the merits of its appeal. This Court thus should deny the motion for a stay.

### Background

7.    The DIP Loan initially matured in December 2024. As that date approached, the Debtors lacked the liquidity to repay the loan. The Debtors, the Creditors' Committee and the FILO Lenders agreed to utilize the assistance of the Honorable Judge Marvin Isgur

---

[7] *See* Bankr. Doc. No. 5197.

[8] *See* May 30 Ruling Transcript, at 15:18–16:7.

to act as a mediator, to formulate a path forward in the Debtors' chapter 11 cases.  Over

multiple months, and eight subsequent DIP Loan maturity date extensions, the Debtors,

side-by-side with the Creditors' Committee, negotiated the FILO Settlement with the FILO

Lenders.

8.    The FILO Settlement provides many benefits to the Debtors' estates, including:

i.    the continued use of cash (which is the collateral of the FILO Lenders), without which the Debtors' cases would come to an imminent value destructive halt, and an extension of the DIP Loan maturity date;[9]

ii.    the resolution of disputes with the FILO Lenders and agreement that they will not seek to foreclose on their collateral, in exchange for adequate protection;[10]

iii.    the preservation of the Debtors' interest in litigation assets which make up the FILO Lenders' collateral, which would otherwise be subject to foreclosure, by transferring that interest to a litigation trust in which the Debtors will retain a residual "Class B" interest;[11]

iv.    a $125 million Litigation Funding commitment from the FILO Lenders to afford the Litigation Trust the funds necessary to monetize valuable litigation claims for the benefit of the Debtors and their creditors;[12]

v.    the appointment of an independent Litigation Trustee, who will owe fiduciary duties to all beneficiaries of the Litigation Trust, including the Debtors' estates, when liquidating Litigation Trust Assets;[13]

vi.    the Debtors' consent rights over, and/or the ability to object to, the Litigation Trustee's disposition of material Litigation Trust Assets;[14]

---

[9] FILO Settlement Order at ¶ 20, Ex. 2.

[10] FILO Settlement Motion at ¶ 8.

[11] FILO Settlement Order at ¶ 6.

[12] FILO Settlement Order at Ex. 1, ¶ 10(a)

[13] FILO Settlement Order at ¶ 11.

[14] FILO Settlement Order at Ex. 1, ¶ 7.

vii.    material reductions in the interest rates of loans under the DIP Loan and the FILO Lenders' Prepetition Bridge Facility, the present value of which is estimated to be worth at least $13 million;[15]

viii.    a settlement of disputes regarding the "multiple on invested capital" payable to the FILO Lenders under the Prepetition Bridge Facility (from $63.75 million to as low as $11.25 million);[16]

ix.    the subordination by the FILO Lenders of $10 million of the Prepetition Bridge Facility to administrative and priority claims (and sharing recoveries with general unsecured claims);[17]

x.    $6.5 million in initial estate funding (as well as continued funding under a transition services agreement), which will be used to fund costs and expenses of operating the Debtors' estates after establishment of the Litigation Trust;[18] and

xi.    the Debtors retaining $15 million in cash, which in the event the Plan is confirmed, the Debtors may use for any purpose,[19] including to fund accelerated payments to administrative creditors.

9.    On April 28, 2025, the Debtors filed a motion seeking approval of the settlement (Bankr. Doc. No. 4746) ("**FILO Settlement Motion**").  The Commonwealth objected (Bankr. Doc. No. 4921) ("**Commonwealth Objection**").

10.    On May 29, 2025, the bankruptcy court held an evidentiary hearing ("**May 29 Hearing**").  The court heard live testimony from John Castellano, the Debtors' Chief Restructuring Officer and member of the Debtors' independent Transformation Committee, and William Transier, a member of the Debtors' Transformation Committee.

---

[15] FILO Settlement Order at Ex. 1, ¶ 12.

[16] FILO Settlement Order at Ex. 1, ¶ 11.

[17] Castellano Decl. Bankr. Doc. No. 4903 at ¶¶ 22, 24; FILO Settlement Order at Ex. 1, ¶ 6.

[18] FILO Settlement Order at Ex. 1, ¶ 10(c).

[19] FILO Settlement Order at Ex. 1, ¶ 6.

11.   On May 30, 2025, the bankruptcy court issued a detailed oral ruling, spanning 70 minutes and 40 transcript pages, ("**May 30 Ruling**") approving the FILO Settlement. On June 2, 2025, the bankruptcy court entered the FILO Settlement Order (Bankr. Doc. No. 5035) ("**FILO Settlement Order**").

12.   In approving the settlement, the bankruptcy court made detailed factual findings.  Among other things, the court (i) found that the FILO Lenders would be entitled to foreclose on the Debtors' assets absent approval of the FILO Settlement and emphasized that the court "would lift the [automatic stay]" to allow the FILO Lenders do so,[20] (ii) found "no question the Debtors don't have liquidity," emphasized that foreclosure would "convert [the cases] to a Chapter 7 and result in a very material destruction for the Debtors' administrative and unsecured creditors," and accordingly found that the settlement was fair and equitable, "in the best interest of the estate" and "in the best interest of other creditors",[21] (iii) found the evidence "unrefuted" that the FILO Settlement allows the Debtors to avoid substantial litigation costs and risks associated with the FILO Lenders seeking relief from the automatic stay,[22] (iv) found that, "without this settlement, there's virtually no hope of any recover[y] for unsecured creditors.  It goes away.  There is none. Because the secured creditor can take and foreclose on all of the assets",[23] and (v) found that the FILO Settlement did not constitute an improper *sub rosa* plan because, among

---

[20] *See* May 30 Ruling Tr., at 25:18–25, 26:1–9.

[21] *Id.* at 23:1–8; 12:16–20; 12:21–13:16.

[22] *Id.* at 12:9–20.

[23] *Id.* at 12:21–13:16.

other reasons, the FILO Settlement does not alter the Bankruptcy Code's priority scheme or dictate the terms of a chapter 11 plan.[24]

13.    On June 13, 2025, the Commonwealth filed a motion for a stay pending appeal (Bankr. Doc. No. 5126) ("**Bankruptcy Court Stay Motion**").  On June 23, 2025, the bankruptcy court denied the motion.  (Bankr. Doc. No. 5177) ("**Order Denying Stay**"). The court first found that the Commonwealth was not likely to succeed on the merits, explaining that it had not made any "mistake of law or erroneous factual finding."[25]  The court next emphasized that "there would be substantial harm staying the approval of a settlement agreement."  *Id*.  "Staying the relief requested immediately halts these cases, including the plan confirmation hearing scheduled in July, and leads to an imminent conversion of these cases to chapter 7, where many unsecured creditors stand to receive nothing.  Approving the settlement ensures a plan confirmation hearing and will pay some creditors.  Thus, the public interest also weighs in favor of denying a stay pending appeal."[26]

14.    The Commonwealth now seeks a stay from this Court.

## Statement of the Issue

15.    Whether the FILO Settlement Order should be stayed pending appeal.

---

[24] *Id.* at 24:5–11.

[25] Order Denying Stay at p.3.

[26] *Id.*

**Argument**

## I.    The Stay Request Should Be Denied.

16.    A stay pending appeal "is an extraordinary remedy" that requires "a substantial showing by the movant, and is not to be granted lightly."[27]  Courts consider (i) whether the movant has made a showing of likelihood of success on the merits, (ii) whether the movant has made a showing of irreparable injury if the stay is not granted, (iii) whether the granting of the stay would substantially harm the other parties, and (iv) whether the granting of the stay would serve the public interest.[28]  "Movants bear the burden of proving by a preponderance of the evidence that the stay pending appeal should be granted."[29]  A "stay is not a matter of right, even if irreparable injury might otherwise result."[30]  The Commonwealth fails to make the required showing.  Notably, (i) the Commonwealth openly admits that it "does not dispute **any** specific findings of the bankruptcy court"; and (ii) the Commonwealth "has not included any affidavit or sworn statements supporting facts subject to dispute with this Motion."[31]  The Commonwealth's Motion accordingly fails.

---

[27] *Yucaipa Corp. Initiatives Fund, ILP v. Piccadilly Rests., LLC*, No. 14-00609 (RFD), 2014 WL 1871889, at *2 (W.D. La. May 6, 2014).

[28] *In re Barrow Shaver Res. Co*., No. 24-33353 (ARP), 2025 WL 685513, at *2–3 (Bankr. S.D. Tex. Mar. 3, 2025) (citing *In re First S. Savs. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987); *see also In re Dernick*, Nos. 18-32417 & 18-32494 (EVR), 2019 WL 236999, at *2 (Bankr. S.D. Tex. Jan. 16, 2019) (same).

[29] *Dernick*, 2019 WL 236999, at *2.

[30] *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 433 (2009)).

[31] *See* Motion fn. 35 (emphasis added).

**A.    The Commonwealth Is Not Likely To Succeed on the Merits.**

17.    At the outset, the Commonwealth falls well short of establishing the requisite "strong showing" of a likelihood of success.[32]  The Commonwealth contends that (i) the FILO Settlement is not in the best interests of the Debtors and their estates, (ii) the FILO Settlement is a *sub rosa* plan, and (iii) the Court must resolve confirmation and effective date issues before approving the FILO Settlement.  But the bankruptcy court already rejected those arguments, issuing a thoughtful oral ruling supported by detailed factual findings that this Court would review only for clear error.[33]  Yet the Commonwealth does not challenge any of the bankruptcy court's factual findings.  It accordingly provides no basis to disturb the bankruptcy court's conclusions.

a.    *The FILO Settlement is in the Best Interests of the Debtors and their Estates*

18.    Under section 363 of the Bankruptcy Code, a trustee or debtor-in-possession may, after notice and a hearing, "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Such a use, sale, or lease "must be supported by an articulated business justification, good business judgment, or sound business reasons."[34]  Under Bankruptcy Rule 9019, a bankruptcy court may approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the

---

[32] *See Nken*, 556 U.S. at 434.

[33] *See Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017).

[34] *The Cadle Co. v. Moore (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) (internal citation omitted); *In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale . . . .").

best interest of the estate.[35]  A settlement "need not result in the best possible outcome for the debtor, but must not 'fall beneath the lowest point in the range of reasonableness.'"[36] When a settlement involves the transfer of substantially all property of the estate, the settlement must be supported by a valid business judgment, including "a valid business justification for the process occurring separate from the plan confirmation process."[37]

19.   The bankruptcy court correctly found that approval of the FILO Settlement satisfied this standard, making a series of factual findings that the Commonwealth does not dispute.[38]

20.   *First*, the bankruptcy court found that Debtors' primary remaining assets are litigation claims seeking more than $2 billion in damages.[39]  It found that, without the benefit of additional time and litigation financing provided under the FILO Settlement, the estates would be unable to realize any of this value, to the detriment of all creditors.[40]  The court found that no credible alternative financing options are available.[41]

21.   *Second*, the bankruptcy court credited "unrefuted" testimony that "the settlement agreement allows the Debtors to avoid substantial litigation costs and risks

---

[35] *See Off. Comm. of Unsecured Creditors v. Osherow (In re Age Refin. Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015).

[36] *In re Idearc Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009), *subsequently aff'd sub nom. Spencer Ad Hoc ZEquity Comm. v. Idearc, Inc. (In re Indearc, Inc.)*, 662 F.3d 315 (5th Cir. 2011) (quoting *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (internal citation omitted)).

[37] *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 423 (Bankr. S.D. Tex. 2009).

[38] *See* May 30 Ruling Tr. at 29:22–30:15; *see also* 12:9–20, 12:21–13:22, 13:23–14:24, 15:6–13, 15:20–16:7, 18:4–13, 19:6–22, 25:18–26:9, 28:18–29:1, 30:18–21.

[39] *Id.* at 7:9–24; *Id.* at 17:15–21; *see also* Castellano Decl. ¶ 19.

[40] *See* May 30 Ruling Tr. at 18:2–13.

[41] *Id.*; *Id.* at 13:17–22.

associated with the FILO secured parties seeking relief from the automatic stay, to exercise remedies against their collateral, and terminating consensual use of cash collateral." [42] Absent the settlement, the Debtors would be unable to further extend their use of cash, causing their cases to come to "a screeching halt."[43]  The court also made clear that "there's nothing [it] would do to extend [the use of cash collateral] based upon the lack of adequate protection."[44]  Additionally, without the FILO Settlement, the FILO Lenders would seek to lift the automatic stay to foreclose on all of the Debtors' assets, including their litigation claims (which comprise the FILO Lenders' collateral).[45]  The court also confirmed it would enforce the terms of the DIP Financing Order and grant such relief.[46]  If the FILO Lenders successfully exercise their remedies under the DIP Financing Order, it is more than likely that the Debtors' estates would not receive any cash proceeds from the disposition of their remaining assets and the Debtors would be unable to satisfy any outstanding administrative and priority claims, let alone provide recoveries to unsecured creditors.[47]

22.    *Third*, the bankruptcy court recognized the numerous additional benefits provided by the FILO Settlement.[48]  Most notably, the FILO Settlement would allow the Debtors to retain their economic interest in the estate assets being transferred to the

---

[42] *Id*. at 12:11–16.

[43] *Id*. at 13: 16–19; 3:1–7.

[44] *Id*. at 21:6–9.

[45] *Id*. at 20:16–21.

[46] *Id*. at 25:121–26:10

[47] *Id*. at 20:16–19; 25:18–25, 26:1–9; 14:1–8.

[48] *Supra* ¶ 7.

Litigation Trust (including valuable litigation claims which would otherwise be subject to foreclosure) by receiving interests in the Litigation Trust.[49]

23.  The Commonwealth argues that the likelihood of full recovery for administrative and priority creditors is too speculative.[50]  But the Commonwealth ignores that *any* recovery for administrative and priority creditors depends on the Debtors' ability to both retain and monetize their litigation claims.  Any suggestion that the Debtors would retain their interest in litigation claims absent the FILO Settlement is disconnected from the unrefuted record in these cases, including the bankruptcy court's clear direction that it would lift the stay to allow the FILO Lenders to foreclose on and acquire their collateral absent the settlement.  What's more, the bankruptcy court recognized that, without the FILO Settlement, the Debtors have no means of monetizing their remaining assets and nothing that could be liquidated to pay administrative claimants.[51]  The court found that the FILO Settlement "is the only path that provides any opportunity for any runway for the estate to have an opportunity to provide any form of meaningful recovery . . ."[52]  Accordingly, the Commonwealth has no probability of success on the merits of its appeal and falls far short of the showing required to warrant a stay.

---

[49] *See* May 30 Ruling Tr., at 5:8–13; *see also* FILO Settlement Term Sheet ¶¶ 7a.i., 7.i.iv.

[50] *See* Motion ¶ 27.

[51] May 30 Ruling Tr., at 29:25–30:3.

[52] *Id*, at 23:1–8.

b.    *The FILO Settlement is Not a "Sub Rosa" Plan*

24.    The Commonwealth asserts that the bankruptcy court ruled that "the filing of a chapter 11 plan . . .prevents the FILO Settlement from being a sub rosa plan. . ."[53]  The record forecloses that contention.  In the bankruptcy court's detailed ruling, the court explained that it found that the FILO Settlement does not constitute a sub rosa plan because, among other reasons, the FILO Settlement (i) "complies with the Bankruptcy Code and doesn't dictate the terms of a plan",[54] (ii) recognizes the existing priority of creditors, including the FILO Lenders' super-priority liens over all of the Debtors' assets under the DIP Financing Order, (iii) allows the Debtors to preserve their interests in valuable assets by retaining the Class B interests in the Liquidation Trust[55] and, as stated in the unrefuted testimony from Mr. Castellano, all interest is lost without the FILO Settlement[56], and (iv) "complies with the Bankruptcy Code" because the FILO Settlement does not "dictate the terms of a plan," "dispose of claims . . . against the estate," or "restrict creditor votes."[57]

25.    The bankruptcy court correctly distinguished *In re Braniff Airways, Inc.*, 700 F.2d 935 (5th Cir. 1983).  The court explained that the transaction in *Braniff* dictated the exact terms of a chapter 11 plan, including how certain proceeds were to pay certain creditors outside of the chapter 11 plan process.[58]  By contrast, in this case, there are "two

---

[53] Motion ¶ 21.a.

[54] May 30 Ruling Tr., at 26:11–14.

[55] *Id.* at 5:8–16.

[56] *Id.* at 13:17–22.

[57] *Id.* at 26:11-16.

[58] *Id.* at 27:3–20.

separate documents" that "stand and fall on their own."[59]  The bankruptcy court thus determined that, although the FILO Settlement and Plan complement each other, one does not dictate the terms of the other.[60]  The Commonwealth has no sound response, and instead rehashes the same arguments the bankruptcy court already properly rejected on the facts.

26.    The Commonwealth's assertion that "the FILO Settlement predetermines [the] central creditor-treatment issues" also misses the mark.  The FILO Settlement merely recognizes treatment already provided for by the DIP Financing Order.  As the bankruptcy court noted, "secured creditors have the right to rely on court orders and that the court will grant the relief that is provided in those orders."[61]  Accordingly, the bankruptcy court was correct in finding that the FILO Settlement "[does] not impermissibly restructure the rights of the Debtors' creditors."[62]

c.    *The Commonwealth's Confirmation Objections are Misplaced and Have No Relevance to the Appeal*

27.    The Commonwealth contends that the Debtors failed to establish that the FILO Settlement would guarantee repayment of administrative expense and priority claims in full or that settlement approval should have awaited confirmation.  These are objections to confirmation of the Debtors' proposed chapter 11 plan, not valid objections to the FILO Settlement.  As the bankruptcy court noted, "[t]his settlement stands on its own" and

---

[59] *Id.*

[60] *Id.*

[61] *Id.* At 11: 3–10.

[62] FILO Settlement Order ¶ L.

"confirmation is an entirely different endeavor."[63]  The Commonwealth's confirmation objections in disguise are also misplaced.  The Debtors proved that, absent the settlement, administrative expense and priority creditors would receive nothing, while with the settlement, they are likely to be paid in full.  That is more than sufficient to justify approval of the FILO Settlement.

### B.    The Commonwealth Has Not Proven Irreparable Harm.

28.    The Commonwealth has failed to demonstrate that it will be irreparably harmed absent a stay.  The movant "must demonstrate an injury that is neither remote nor speculative, but actual and imminent."[64]  Yet the Commonwealth offers only two sentences of attorney argument, without any supporting evidence.  The Commonwealth asserts that, without a stay, (i) the estates' remaining assets will be transferred to the Litigation Trust and creditor treatment predetermined, even if a plan is not confirmed and (ii) if the FILO Settlement is consummated and the Litigation Trust begins to incur expenses and dissipate funds, the expenditures of the Litigation Trust may be "a complete waste" in the event the Settlement Order is later reversed.[65]  But a party seeking a stay pending appeal must prove

---

[63] May 30 Ruling Tr., at 27:9–28:2.

[64] *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015) (quoting *Tucker Anthony Realty Corp. v Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)); *see also Plaquemines Par. v. Chevron U.S., Inc.*, 84 F.4th 362, 576 (5th Cir. 2023) ("[S]imply showing some possibility of irreparable injury fails to satisfy the second factor") (quoting *Nken*, 556 U.S. at 420); *Vine v. PLS Fin. Servs., Inc.*, No. 4:18-CV-00450 (ALM), 2019 WL 4257108, at *8 (E.D. Tex. Sept. 9, 2019) ("The party moving to stay proceedings must prove more than just a possibility of irreparable injury.").

[65] Commonwealth Motion ¶ 35.

irreparable harm with *evidence*, not merely conjecture, and that failure alone is reason enough to deny a stay.[66]

29.    The Commonwealth's contentions also fail on their own terms.    *First*, the transfer of assets to the Litigation Trust does not alter the priority of distributions to creditors.    The FILO Lenders are the Debtors' senior secured lender with a senior lien on substantially all of the assets being transferred to the Litigation Trust and the proceeds thereof.    The Litigation Trust's distribution waterfall is true to this reality.[67]    It also delivers all remaining proceeds to be distributed *in accordance with the chapter 11 plan.*    Moreover, absent the FILO Settlement's asset transfer, there will be nothing to distribute to any creditor besides the FILO Lenders.

30.    *Second*, the Commonwealth's bare assertion about waste is foreclosed by the bankruptcy court's factual findings.    As the bankruptcy court itself explained, if the FILO Settlement Order were stayed, there would be "substantial harm" as "staying the relief requested immediately halts these cases, including the plan confirmation hearing scheduled in July, and leads to an imminent conversion of these cases to chapter 7"[68] as the FILO Lenders would foreclose and credit bid to own the litigation claims outright, without the

---

[66] *In re MTE Holdings, LLC*, No. 19-12269, 2021 WL 4203339, at *3 (Bankr. D. Del. Sept. 15, 2021) ("[I]f the movant does not make the requisite showings on either of [likelihood of success on the merits or irreparable harm], the [court's] inquiry into the balance of harms . . . is unnecessary, and the stay should be denied without further analysis.") (quoting *In re Revel AC, Inc.*, 802 F.3d at 571); *See also Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1301 (7th Cir. 1997) (same).

[67] *See Motorola, Inc. v. Off. Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) ("[W]hether a pre-plan settlement's distribution plan complies with the Bankruptcy Code's priority scheme will be the most important factor for a bankruptcy court to consider in approving a settlement under Bankruptcy Rule 9019. In most cases, it will be dispositive.").

[68] *See* Order Denying Stay p. 3.

obligation or fiduciary duty to maximize the value of the claims for the Debtors'
administrative, priority and unsecured creditors.[69]

31. In any event, any claimed harms to the Commonwealth would not be
irreparable. "[I]rreparable injury must be more than monetary loss."[70]  Indeed, monetary
loss can only qualify as irreparable if it is so severe as to threaten the existence of the
movant's business.  *See Div. 80, LLC v. Garland*, No. 22-CV-148 (JVB), 2022 WL
3648454, at *4 (S.D. Tex. Aug. 23, 2022) (a "'preliminary injunction is not appropriate
where the potential harm to the movant is strictly financial, unless the potential economic
loss is so great as to threaten the existence of the movant's business.'" (quoting *Andritz
Sundwig GmbH v. U.S.*, No. 18-02061 (NFA), 2018 WL 3218006, at *10 (S.D. Tex. July
2, 2018)); *Ron Hoover Co., Inc. v. Yamaha Motor Corp., USA*, No. 18-CV-205 (HT), 2018
WL 7253954, at *3 (S.D. Tex. Dec. 3, 2018) ("Potential loss of revenue, absent a showing
of economic loss 'so great as to threaten the existence of the movant's business,' does not
merit preliminary injunctive relief") (internal citation omitted); *Bond Pharmacy, Inc. v.
AnazaoHealth Corp.*, 815 F. Supp. 2d 966, 974 (S.D. Miss. 2011) ("Monetary loss may
constitute irreparable harm only where the movant's very existence is threatened, *i.e.*,

---

[69] *See* May 30 Hearing Tr. at 10:17–22; 12:8–25, 13:1–22; 15:6–13; *see also* Declaration of John R. Castellano in
Support of Debtors' Response in Opposition to the Commonwealth of Massachusetts' Emergency Motion for Stay
Pending Appeal, attached as **Exhibit A** hereto ("**Castellano Stay Decl.**"), ¶ 8; May 29 Hearing Tr. at 57:13–60:24.

[70] *In re Wellington*, 631 B.R. 833, 843 (Bankr. M.D.N.C. 2021) (citing *Long v. Robinson*, 432 F.2d 977, 980 (4th Cir.
1970); *DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) ("There can be no irreparable
injury where money damages would adequately compensate a plaintiff."); *Atwood Turnkey Drilling, Inc. v. Petroleo
Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989) (no irreparable injury where harm is strictly financial unless "the
economic loss is so great as to threaten the existence of the movant's business"); *In re Turki*, 652 B.R. 474, 479
(Bankr. D.S.C. 2023).

where an act threatens an ongoing business with destruction as opposed to mere disruption.") (internal quotations and citation omitted).

32.   The Commonwealth plainly cannot make that showing.  This Court recently denied another motion in this same case for a stay based on a lack of irreparable harm.[71]  It should do the same here.

### C.   Staying the FILO Settlement Order Will Cause Substantial and Irreparable Harm to Other Parties

33.   As the bankruptcy court already found, a stay of the FILO Settlement Order would cause significant and irreparable harm to the Debtors and all of their creditors, including the FILO Lenders, administrative expense creditors, priority creditors, and general unsecured creditors:  "[s]taying the relief requested immediately halts these cases, including the plan confirmation hearing scheduled in July, and leads to an imminent conversion of these cases to chapter 7, where many unsecured creditors stand to receive nothing."[72]  Indeed, the bankruptcy court made specific findings in its rulings on the harm that will befall the Debtors and creditors if the FILO Settlement is not approved and implemented.[73]  And the Commonwealth concedes it does not contest any of the bankruptcy court's fact findings.  That alone warrants denial of the Motion.

34.   The FILO Lenders have already extended the DIP Loan's maturity until July 16, 2025 in order to facilitate confirmation.[74]  They have made absolutely clear that no

---

[71] *See Memorandum Opinion and Order*, No. 25-cv-01584 (GCH) (Doc. No. 15).

[72] *See* Order Denying Stay at p. 3.

[73] *See* May 30 Hearing Tr. at 12:21–25, 13:1–16.

[74] *See* Bankr. Doc. No. 5197.

further extension will be offered if the FILO Settlement is not effective.  The Debtors also have no liquidity with which to satisfy the DIP Loan if it were allowed to mature on July 16.[75]

35.  If the FILO Settlement Order is stayed the FILO Lenders will likely seek relief from the automatic stay upon the DIP Loan maturity date on July 16, 2025 (which the bankruptcy court indicated it will grant) and exercise remedies to foreclose on the Debtors' assets, hold a foreclosure sale, and credit bid at that foreclosure sale to take title to the Debtors' assets free and clear.  On the other hand, the FILO Settlement provides the only path available to avoid these harms and enable the Debtors to repay creditors, and further provides numerous other benefits to the estates.[76]

36.  Staying the FILO Settlement Order and potentially unwinding the FILO Settlement thus would cause grave harm to the Debtors and their creditors.  Absent the settlement, the Debtors will lose their interest in and control of their remaining assets, and the Debtors will be unable to repay their administrative expense and priority creditors, let alone pursue recoveries for unsecured creditors. The documented harm the Debtors and their creditors would suffer from a stay vastly outweighs any claimed—but entirely unproven—injury to the Commonwealth if the settlement remains undisturbed.

### D.    Public Interest Weighs Strongly Against a Stay.

37.  The public interest also weighs heavily against a stay.  The public interest favors "the expeditious administration of bankruptcy cases as well as the preservation of

---

[75] *See* Castellano Stay Decl., ¶ 6.

[76] *See* supra ¶ 21.

the bankrupt's assets for purposes of paying creditors, rather than litigation of claims lacking a substantial possibility of success. . ."[77]  Public policy also holds that "settlements are favored in bankruptcy."[78]  Staying the FILO Settlement Order would powerfully undercut both interests by undermining the FILO Settlement *and* hurtling the Debtors towards a value-destructive chapter 7 liquidation.

38.    Conversely, allowing the FILO Settlement to remain effective will benefit not only Debtors and their estates, but also the public interest.  As the bankruptcy court found in another of these bankruptcy proceedings, allowing the Debtors' estates to pursue causes of action is essential "to make the pie as big as possible so that there is a … fair and legal distribution" in furtherance of achieving "the greatest distribution possible for all."[79]

### E.    If the Court Issues a Stay, the Commonwealth Must Post a Bond Sufficient to Protect All Parties in Interest.

39.    Finally, even if a stay were warranted (which it is not), the Commonwealth should be required to post a sufficient bond.  A party seeking a stay pending appeal may be required to post a supersedeas bond in order "to preserve the status quo while protecting the non-appealing party's rights pending appeal,"[80] *see* Fed. R. Bankr. P. 8007(c), with the

---

[77] *In re Metiom, Inc.*, 318 B.R. 263, 272 (S.D.N.Y. 2004); *see also Bullard v. Blue Hills Bank*, 575 U.S. 496, 505 (2015) ("[E]xpedition is always an important consideration in bankruptcy."); *see also Mounce v. Wells Fargo Home Mortg. (In re Mounce)*, 2008 Bankr. LEXIS 4797, at *34 (Bankr. W.D. Tex. July 10, 2008).

[78] *Kearney v. Unsecured Creditors Comm.*, 987 F.3d 1284, 1295 (10th Cir. 2021); *see also* (*Cantu v. Int'l Bank of Com.*, No. CIV.A M-11-28 (RC), 2011 WL 10620314, at *7 (S.D. Tex. Aug. 5, 2011), *aff'd sub nom. In re Cantu*, 464 F. App'x 385 (5th Cir. 2012) (noting strong policy of upholding valid settlement agreements, including in bankruptcy cases).

[79] *See* April 2, 2025 Hearing Transcript, Bankr. Doc. No. 4441 at 48:8–15.

[80] *In re Texas Equip. Co., Inc.*, 283 B.R. 222, 229 (Bankr. N.D. Tex. 2002) (citing *Poplar Grove Planting & Ref. Co. Inc. v. Bache Halsey Stuart Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979)); *see also W.R. Grace & Co.*, 475 B.R. 34, 209 (D. Del. 2012) ), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 532 F. App'x 264

amount set "at or near the full potential harm to [] parties in interest." [81]    The

Commonwealth bears "the burden of demonstrating why the court should deviate from the

ordinary full security requirement." [82]    The Commonwealth, however, entirely fails to

acknowledge the bond obligation.

40.    Here, the harms would be massive.    Administrative and priority creditors,

which are expected to be paid in full under the FILO Settlement, would likely receive

nothing if the FILO Lenders foreclosed on their collateral. [83]    The lost value to these

claimants alone equals approximately $92 million. [84]    Additionally, the Plan contemplates

recoveries to unsecured creditors of up to $246 million. [85]    These creditors would certainly

receive nothing absent the FILO Settlement. [86]    A bond of at least $338 million would be

---

(3d Cir. 2013), and *aff'd sub nom. In re WR Grace & Co*., 729 F.3d 332 (3d Cir. 2013), and *aff'd*, 729 F.3d 311 (3d Cir. 2013).

[81] *In re Scotia Dev. LLC*, 2008 Bankr. LEXIS 5127, at *26 (Bankr. S.D. Tex. July 15, 2008); *see also ACC Bondholder Group, Appellants v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 351 (S.D.N.Y. 2007).

[82] *W.R. Grace & Co.*, 475 B.R. at 209 (citation omitted); *accord de la Fuente v. DCI Telecomms., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) ("Because a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment."); *see also Poplar Grove Planting & Refining Co.*, 600 F.2d at 1191–92 ("If a court chooses to depart from the usual requirement of a full security supersedeas bond . . . it should place the burden on the moving party to objectively demonstrate the reasons for such a departure."); *Calsep A/S v. Intelligent Petroleum Software Sols., LLC*, No. 19-01118 (DHP), 2022 WL 17722665, at *1 (S.D. Tex. Aug. 25, 2022) (The burden is on the movant to objectively demonstrate the reasons for the court's departure from the usual requirement of a full security supersedeas bond."); *see also Preston Wood & Assocs., LLC v. Cameron Architects, Inc.*, No. 16-01427 (DH), 2019 WL 2904297, at *2 (S.D. Tex. Apr. 26, 2019) (same).

[83] *See* Castellano Stay Decl., ¶ 9.

[84] *Id.*

[85] *Id.*

[86] *Id.*

needed to compensate for these potential harms to claimants.[87]   But regardless, as the bankruptcy court already found, there is no basis to enter a stay in the first place.

## **Conclusion**

41.   For the foregoing reasons, the Court should deny the Stay Motion.

---

[87] *Id.*

Dated: June 30, 2025
       Houston, Texas

_/s/  Clifford W. Carlson_
WEIL, GOTSHAL & MANGES LLP
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
Stephanie N. Morrison (24126930)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Email:   Gabriel.Morgan@weil.com
         Clifford.Carlson@weil.com
         Stephanie.Morrison@weil.com


-and-

WEIL, GOTSHAL & MANGES LLP
Jeffrey D. Saferstein (*pro hac vice*
forthcoming)
Zachary Tripp (*pro hac vice* forthcoming)
Robert S. Berezin (*pro hac vice* forthcoming)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:    Jeffrey.Saferstein@weil.com
          Zack.Tripp@weil.com
          Robert.Berezin@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
David J. Cohen (*pro hac vice* forthcoming)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone:  (305) 577-3100
Facsimile:  (305) 374-7159
Email:   DavidJ.Cohen@weil.com

*Attorneys for Debtors*
*and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 30, 2025 a true and correct copy of the foregoing Response in Opposition to the Commonwealth of Massachusetts' Emergency Motion for Stay Pending Appeal was electronically served on all parties registered to receive electronic notice in this case pursuant to the Court's CM/ECF filing system.

/s/ *Clifford W. Carlson*
Clifford W. Carlson

## Exhibit A

**Castellano Stay Decl.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **COMMONWEALTH OF MASSACHUSETTS,** | § § § | |
| **Appellant,** | § § | **No. 25-02825** |
| **v.** | § § | |
| **STEWARD HEALTH CARE SYSTEM LLC,** *et al.***,** | § § § | |
| **Appellees,** | § § | |
| ------------------------------------------------- | § | |
| **In re:** | § § | **Chapter 11** |
| **STEWARD HEALTH CARE SYSTEM LLC,** *et al.***,** | § § | **Case No. 24-90213 (CML)** |
| **Debtors.**[1] | § § | **(Jointly Administered)** |
| ------------------------------------------------- | § | |

## DECLARATION OF JOHN R. CASTELLANO IN SUPPORT OF DEBTORS' RESPONSE IN OPPOSITION TO THE COMMONWEALTH OF MASSACHUSETTS' EMERGENCY MOTION FOR STAY PENDING APPEAL

I, John R. Castellano, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is: 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204.

1.      I am the Chief Restructuring Officer of Steward Health Care System LLC and each of its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" and, together with the Debtors' direct and indirect non-debtor subsidiaries, the "**Company**").    I also serve on the Transformation Committee, along with William Transier and Alan Carr.  Prior to becoming the Debtors' Chief Restructuring Officer, beginning in October 2023, I advised the Company in my capacity as Managing Director of AlixPartners, LLP, an affiliate of AP Services, LLC (collectively, "**AlixPartners**").  In these capacities, I am familiar with the Debtors' day-to-day operations, books and records, business and financial affairs, and the circumstances leading to the commencement of these chapter 11 cases.

2.      I submit this Declaration (this "**Declaration**") in support of the Debtors' *Response in Opposition to the Commonwealth of Massachusetts' Emergency Motion for Stay Pending Appeal* (the "**Objection**"), filed concurrently herewith in the above-captioned proceeding.[2]

3.      Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge concerning the Debtors' operations and financial condition, my review of relevant documents, information provided to me by employees working under my supervision, my opinion based upon experience, knowledge, and information concerning the Company's operations and financial condition, my own reasonable inquiry, and/or my discussions with the Debtors' other officers, directors, and

---

[2]    Capitalized terms used but not defined herein shall have the meanings assigned to them in the Objection.

restructuring advisors, including professionals at Weil, Gotshal & Manges LLP and AlixPartners.  I am over the age of 18 and I am authorized to submit this Declaration on behalf of the Debtors.  If called to testify, I would testify competently to the facts set forth in this Declaration.  My qualifications, experience, and background are detailed in the *Declaration of John R. Castellano in Support of Debtors' Chapter 11 Petitions and First-Day Pleadings* (Bankr. Doc. No. 38), which is incorporated herein by reference.

4.      I am familiar with the disputes between the Debtors, the FILO Lenders, the Creditors' Committee, and the Commonwealth and the settlement (the "**FILO Settlement**").  I believe that the FILO Settlement is in the best interests of the Debtors, their creditors, and their estates.

5.      The viability of the FILO Settlement is, in large part, due to the exhaustive negotiation and significant level of consensus reached with the Debtors' stakeholders.  I believe that an imposition of a stay pending appeal of the FILO Settlement Order would only delay administration of the Debtors' estates and threaten to drive the Debtors into a chapter 7 without the benefit of its most valuable litigation assets, which would be much worse for all parties in interest.

6.      I believe that the risk that the DIP Loan will mature during the pendency of an appeal if a stay is granted is substantial, as is the cost of that maturity to the Debtors' estates.  The FILO Lenders have agreed to extend the maturity of the DIP Loan until July 16, 2025 in order to facilitate the confirmation hearing.  However, it is my understanding that the FILO Lenders will not provide any further extension of the DIP Loan's maturity if the FILO Settlement is not in place.  If the DIP Loan is allowed to mature

on July 16, the Debtors have no liquidity with which they could repay the DIP Loan.  I also understand that if a stay were granted, the FILO Lenders are unlikely to extend applicable deadlines to establish the Litigation Trust or provide further forbearances of their right to foreclose on their collateral.  The DIP Loan would therefore likely mature if any stay of the FILO Settlement Order is entered.

7.      If the FILO Settlement Order is stayed pending appeal, I believe the FILO Lenders will file a motion seeking relief from the automatic stay to preserve the value of their collateral and exercise remedies.  Without access to cash and the financing provided under the FILO Settlement, the Debtors will not have the liquidity necessary to preserve and monetize the Debtors' assets (including substantial litigation claims) for the benefit of the estates' creditors.  Therefore, if the FILO Settlement Order is stayed, I believe there is substantial risk that the estates will lose their ownership in the remaining estate assets (including valuable litigation claims).

8.      If the FILO Settlement Order is stayed, the Debtors also have no reason to believe that the FILO Lenders would agree to finance the litigation or otherwise bear the cost of increasing the value of their collateral for the benefit of other creditors (including administrative expense, priority, and unsecured creditors).  I understand that there is significant risk that in any sale or auction of the Debtors' assets, the FILO Lenders would credit (and/or cash) bid to obtain full title and ownership of the litigation assets.  In doing so, the FILO Lenders could credit bid not only the amount of the DIP Loan but also their other secured debt (which, inclusive of the multiple-on-invested-capital amount absent a settlement, exceeds $310 million).  At any auction or sale of the Debtors' litigation

claims, the Debtors believe pure cash bidders are unlikely to prevail in an auction or sale process based on (i) the litigation financing process the Debtors conducted and (ii) the heavy discount likely to be applied to the litigation claims, where significant additional value will be realized only over time and at considerable expense.  As a result, the Debtors believe the most likely outcome of such a sale or auction process is that the FILO Lenders will purchase all or substantially all of the Debtors' assets primarily or exclusively using a credit bid.

9.      I therefore believe the cost of a stay of the FILO Settlement would be substantial.  Administrative and priority claimants, which are expected to be paid in full under the Debtors' chapter 11 plan, would likely receive nothing if the FILO Lenders foreclosed on their collateral.  The lost value to these claimants alone would be approximately $92 million based on the estimated Plan recoveries.  Additionally, the Plan contemplates recoveries to unsecured creditors of approximately $246 million.  These creditors would receive nothing absent the FILO Settlement.  As such, I believe that if the FILO Settlement Order were to be stayed, the Commonwealth should be required to post a bond of at least $338 million to compensate the potential harm to the Debtors and administrative, priority, and unsecured creditors.

10.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 30, 2025                      /s/ John R. Castellano
Chicago, Illinois                              John R. Castellano
                                                       Chief Restructuring Officer
                                                       Steward Health Care System LLC