IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF MASSACHUSETTS, | § § § § | |
| Appellant, | § § | Case No. 25-02825 |
| v. | § § | |
| PLAN ADMINISTRATOR COMMITTEE, AS TRUSTEE OF PLAN TRUST OF STEWARD HEALTH CARE SYSTEM LLC, *et al.*, | § § § § § § | |
| Appellees, | § § | |
| In re: | § § | Chapter 11 |
| STEWARD HEALTH CARE SYSTEM LLC, *et al.*, | § § § | Case No. 24-90213 (CML) |
| Debtors.[1] | § § § | (Jointly Administered) |

**APPELLEES' MOTION TO DISMISS APPEALS AS MOOT**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is: 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204. The Plan Trust, the successor in interest to Steward Health Care System LLC and its affiliated Debtors, was formed on August 27, 2025. *See* Bankr. Doc. No. 5955.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 2

BACKGROUND ........................................................................................................................ 3

    **I.**    The Impending Foreclosure........................................................................................ 3

    **II.**   The Settlement and the Chapter 11 Plan ................................................................... 4

        **A.**    The FILO Settlement Agreement ..................................................................... 4

        **B.**    The Chapter 11 Plan ......................................................................................... 5

ARGUMENT ............................................................................................................................... 8

    **I.**    The Court Should Dismiss the Settlement Appeals as Moot ..................................... 8

        **A.**    The Appeals from the Settlement Order Are Constitutionally Moot ............................................................................................................... 8

        **B.**    The Appeals from the Settlement Order Are Statutorily Moot ........ 11

CONCLUSION ......................................................................................................................... 13

Appellees Monica Blacker, Alan J. Carr, and William Transier, in their capacity as sole members of the Plan Administrator Committee, as trustee of the Plan Trust, successor in interest to Steward Health Care System LLC and its affiliated Debtors, respectfully submit this motion to dismiss the appeals of the Settlement Order as moot.[2]

## PRELIMINARY STATEMENT

In the Settlement Appeals, Appellants contend the agreement, known as the Settlement, was a *sub rosa* plan—meaning the Settlement was effectively a liquidation plan and therefore could only be approved as part of plan confirmation. After the Settlement Appeals were filed, the bankruptcy court confirmed a liquidation plan that incorporated and re-approved the Settlement—meaning the Settlement was approved as part of plan confirmation. The bankruptcy court's order confirming the plan and re-approving the Settlement renders Appellants' *sub rosa* plan argument and any other challenges to the Settlement moot under Article III of the Constitution.

The appeals are also statutorily moot under 11 U.S.C. § 363(m), which says a sale of property to a good-faith purchaser cannot be unwound unless the order approving the sale was stayed pending appeal. The Settlement was a sale of Debtors' assets to a good-faith purchaser. The order was not stayed pending appeal. The sale therefore cannot be reversed, and the appeal is statutorily moot.

---

[2] TRACO International Group, Inc.'s ("TRACO") and the Deferred Compensation Plan Participants' appeals, respectively docketed at case numbers 4:25-CV-2829 and 4:25-CV-2901, were consolidated with the Commonwealth of Massachusetts's Appeal, with this case number as lead case. Debtors refer to the appellants collectively as "Appellants" unless otherwise specified.

For these reasons, the Court should dismiss the Settlement Appeals as moot.

## BACKGROUND

### I. The Impending Foreclosure

After filing for chapter 11 bankruptcy on May 6, 2024, Debtors financed these chapter 11 cases with a debtor-in-possession financing facility provided by the FILO Lenders in the principal amount of $375 million. *See* Bankr. Doc. No. 1538. In exchange for this "DIP Loan," the FILO Lenders obtained a superpriority security interest in substantially all of Debtors' assets. The assets included unliquidated litigation claims seeking over $2 billion in recoveries. *Id.* ¶ 5; *see also* Bankr. Doc. 5028, at 62.

The DIP Loan became due in December 2024 while the bankruptcy cases were still pending, but before Debtors were able to propose and obtain confirmation of a chapter 11 plan. Although Debtors negotiated numerous short-term extensions of the loan, by early-2025, the FILO Lenders were not willing to extend the term of the loan any further. Debtors did not have the liquidity they would have needed to pay the loan so, absent a settlement, Debtors would have been in default.

A default would have derailed the bankruptcy cases. The FILO Lenders could have foreclosed on substantially all of Debtors' assets. And because of their security interest in Debtors' assets, the FILO Lenders would have obtained outright ownership of the assets by foreclosing upon them.[3] Doc. No. 21-1, Ex. 12 (May 30, 2025 hearing transcript), at

---

[3] A credit bid allows a secured creditor to bid the amount of its debt in a foreclosure sale, enabling the secured creditor to "compete with cash bidders with just a pen stroke." Am. Bankr. Inst., *What is Credit Bidding in Bankruptcy*, https://www.abi.org/feed-item/what-is-credit-bidding-in-bankruptcy (last visited Sept. 25, 2025). For instance, in a foreclosure

3

25:22-25. This was no empty threat. The bankruptcy court made clear that the court would lift the automatic stay and permit the FILO Lenders to foreclose, which the FILO Lenders stated on the record they would do. *Id.* 20:16-19; 25:18-26:9; 13:23-14:8. If this happened, all other creditors of Debtors (including administrative creditors) would be left with nothing.

## II.  The Settlement and the Chapter 11 Plan

To prevent foreclosure and continue the bankruptcy cases, Debtors, the FILO Lenders, and the unsecured creditors' committee—assisted by the Honorable Marvin Isgur (who acted as mediator)—entered into the Settlement agreement. The bankruptcy court subsequently entered an order approving the Settlement. After Appellants filed their appeals from the Settlement Order, the bankruptcy court entered an order confirming a chapter 11 plan that incorporated and re-approved the Settlement.

### A.  The FILO Settlement Agreement

Debtors' most valuable assets remaining at the time of the Settlement were unliquidated litigation claims seeking over $2 billion in recoveries. The Settlement transferred Debtors' assets to a Litigation Trust, in which Debtors' estates and the FILO Lenders both hold beneficial interests. Pursuant to the Settlement, the Litigation Trust is litigating the claims in order to obtain recoveries that will benefit the estates' creditors. Under the Settlement, the FILO Lenders have a first priority interest that entitles them to

---

sale of property that can only fetch $1M on the open market that secures a $2M loan, the secured lender starts out with a credit bid of $2M and would easily outbid any cash bidders, who would not pay over $1M.

4

the proceeds generated by the Litigation Trust until the Lenders have been repaid in full. Bankr. Doc. No. 5035 ("Settlement Order") Ex. 1 ¶¶ 7.h.i-iii. Once the FILO Lenders are repaid, the remaining proceeds are available for all other creditors.

In exchange for granting the FILO Lenders' first priority interests in the Litigation Trust, the Debtors received substantial benefits. Those benefits included: the FILO Lenders' claims against Debtors being extinguished; the FILO Lenders giving up their right to foreclose on all of Debtors' assets; and the FILO Lenders committing to provide $125 million in financing to pursue the litigation claims, provide cash recoveries to other creditors, and allow Debtors to continue the bankruptcies. *Id.* ¶ 8. The FILO Lenders also agreed to many other concessions, including subordinating some of their loans, reducing the interest rates on others, waiving certain claims under their loans, and extending the loans' terms. *Id.* ¶¶ 6, 10(c), 12.

The bankruptcy court considered the Settlement at a Rule 9019 hearing, the bankruptcy rule governing approval of settlements. On May 30, 2025, following a lengthy evidentiary hearing on May 29, 2025, the bankruptcy court issued a thorough oral ruling approving the Settlement and entered a written order on June 2, 2025. One of the Appellants, the Commonwealth, moved first in the bankruptcy court and then in this Court for a stay of the Settlement Order pending appeal. *See* Bankr. Doc. No. 5126; Doc. No. 4. Both stay motions were denied. *See* Bankr. Doc. No. 5177; Doc. No. 11.

B.   **The Chapter 11 Plan**

Debtors subsequently proposed and filed a Joint Chapter 11 Plan, which the bankruptcy court confirmed pursuant to a thorough oral ruling on July 16, 2025 after a two-

5

day evidentiary hearing. *See* Bankr. Doc. No. 5774 ("Confirmation Order").[4] At the same time, the bankruptcy court denied the U.S. Trustee's and Appellants' motions to convert or dismiss the chapter 11 cases. *See* Bankr. Doc. No. 5772 ("Dismissal Order"). The order confirming the Plan expressly reapproves the Settlement. The Plan incorporates the essential terms of the Settlement.

The Confirmation Order states the "Plan is deemed to constitute a motion" to approve "the FILO Settlement" (along with other "Plan Settlements") and that entry of the order "constitutes [the bankruptcy court's] approval" of the settlements. Confirmation Order ¶ oo. The Confirmation Order integrates the Settlement without modification, *see id.*, but also supersedes the Settlement Order if any conflict arises: "In the event of any inconsistency between . . . the Confirmation Order, on the one hand, and the FILO Settlement Order . . . on the other hand, the *Confirmation Order shall control.*" *Id.* § LL (emphasis added).

Not only does the Confirmation Order reapprove the Settlement, the Plan provisions repeat and reimplement many of the Settlement's essential terms. For example, Section 7.1 of the Plan establishes the Litigation Trust and vests it with enumerated powers, "[t]o the extent not previously established pursuant to the FILO Settlement Order." Plan at 140. Section 7.2 of the Plan also funds the Litigation Trust and transfers Debtors' assets, including Debtors' litigation claims, to the Litigation Trust. *Id.* at 142-43. Accordingly, the

---

[4] The Plan is included in the Confirmation Order as Exhibit A. For ease of reference, Debtors cite the Plan by referring to the applicable pages of the Confirmation Order, using the page numbers assigned by ECF.

Plan states that the Litigation Trust was established under both "Article VII of this Plan and the FILO Settlement Order." *Id.* at 103. The Litigation Trust is overseen by a Litigation Trustee, whose duties were likewise established under both "the terms of the Plan" and "paragraph 11 of the FILO Settlement Order." Confirmation Order ¶ pp; *see also id.* ¶ 56 (describing the Litigation Trustees' duties under "the Litigation Trust Agreement, the FILO Settlement Order, the Plan, [and] this Confirmation Order."). Further, the Confirmation Order approved the Litigation Trust Agreement (which governs the formation and administration of the Litigation Trust) as a "plan supplement" document. *See* Bankr. Doc. No. 5504 (the "Amended Plan Supplement") (including the Litigation Trust Agreement as Exhibit 10 thereto); Confirmation Order at 3 (defining "Plan Supplement," in part, by reference to the Amended Plan Supplement); Confirmation Order ¶ s (approving the documents contained in the "Plan Supplement").

Appellants have brought a number of appeals to the Settlement Order and subsequent orders entered in connection with plan confirmation. Now, Appellants ask the Court to consolidate the Settlement Appeals with the Plan Appeals[5] and certify these appeals for direct appeal to the Fifth Circuit.

---

[5] Appellees do not object to the consolidation of just the Plan Appeals, only their consolidation with the Settlement Appeals.

7

# ARGUMENT

## I. The Court Should Dismiss the Settlement Appeals as Moot

### A. The Appeals from the Settlement Order Are Constitutionally Moot

Appellants contend that the Settlement Order should be reversed because the Settlement was a *sub rosa* plan. *See, e.g.*, Doc. No. 21-1, Ex. 1 at 1; Doc. No. 4. A *sub rosa* plan is an agreement or transaction that is a disguised chapter 11 plan but is not approved in the plan confirmation process. As the Fifth Circuit put it, a *sub rosa* plan "short circuit[s] the requirements of Chapter 11 for confirmation of a . . . plan." *Pension Benefit Guar. Corp. v. Braniff Airways, Inc.* (*In re Braniff Airways, Inc.*), 700 F.2d 935, 940 (5th Cir. 1983).

Those plan confirmation requirements, set out mostly in 11 U.S.C. § 1129, contain protections for creditors. Among other things, creditors are divided into classes of similar interests and each class can vote to accept or reject the plan. *See* 11 U.S.C. § 1126. Before a vote occurs, chapter 11 debtors must file a disclosure statement that gives creditors the information they need to make an informed decision about the plan. *See* 11 U.S.C. § 1125. The plan confirmation requirements give special protection to impaired classes—that is, creditors whose rights are altered by the plan. If they vote against the plan, the plan cannot be confirmed unless it meets standards designed to protect the impaired creditors' interests. *See, e.g.*, 11 U.S.C. §§ 1129(a)(7), 1129(b). Chapter 11 plans must also satisfy the absolute priority rule and meet various other confirmation requirements. *See generally* 11 U.S.C. § 1129. A settlement that is a *sub rosa* plan cannot be approved outside the plan confirmation process because it does not "scale the hurdles erected in Chapter 11."

*Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.* (*In re Cont'l Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986) (citation omitted).

But the terms of the Settlement *did* scale the hurdles of plan confirmation when it was approved in the Confirmation Order along with other Plan Settlements. As discussed *supra* p. 6, the Plan was "deemed to constitute a motion" to approve the "FILO Settlement" and other "Plan Settlements," and the bankruptcy court specifically "approv[ed] . . . the Plan Settlements," and found they were "fair, equitable, and reasonable and in the best interests of" Debtors and creditors. Confirmation Order ¶ oo.[6] The Settlement was never a *sub rosa* plan (as the Bankruptcy Court found), but that question is now moot. Because the Settlement is part of the *confirmed* Plan, it *cannot be* a *sub rosa* plan. The point of the *sub rosa* plan doctrine is to ensure that the more rigorous procedural safeguards of plan confirmation are applied to something that functions as a plan. In the Confirmation Order, the bankruptcy court approved the Settlement after applying those safeguards. So Appellants' contention that the Settlement was a *sub rosa* plan when it was first approved—before plan confirmation—is now academic.

That means these appeals from the pre-plan Settlement Order have become moot. The "central question [for mootness] is whether a once-living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties."

---

[6] *See also, e.g., id.* ("The Plan is deemed to constitute a motion under section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 with respect to all settlements provided therein, including . . . the FILO Settlement . . . . Entry of this Confirmation Order constitutes this Court's approval of the terms of the Plan Settlements provided for under the Plan.").

9

*Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 548 (5th Cir. 2020) (citation omitted). Mootness can apply to an entire case or to specific issues. *Id.* Where, as here, a settlement is incorporated into a chapter 11 plan, appeals from the pre-plan settlement order can be rendered moot. *See Garner v. Pillar Life Settlement Fund I, L.P.* (*In re Life Partners, Inc.*), 708 F. App'x 831, 835-36 (5th Cir. 2017) (per curiam) ("Because the confirmation order incorporated and implemented the Settlement Agreement, the Pillar Funds's claims were nullified when the bankruptcy court entered the confirmation order.").

The Settlement Appeals are moot because "the issues presented are no longer 'live' [and] the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted). If the appeals went forward and the Court agreed with Appellants that the Settlement was a *sub rosa* plan, the remedy would be to require the Settlement to meet the rigors of plan confirmation. That already happened. So there is no longer any point in adjudicating this appeal.

Put differently, if the Court vacated the Settlement Order, nothing would change because the Settlement is separately approved in the Confirmation Order. And those two orders do not stand on equal footing—the Confirmation Order supersedes if there is any conflict. To be sure, the same Settlement was approved in both orders. As the bankruptcy court observed "[f]or the avoidance of doubt," when confirming the Plan, "the FILO Settlement was approved by this Court pursuant [to the FILO Settlement] Order, . . . and nothing in the Plan or this Confirmation Order or otherwise shall modify the FILO Settlement Order." Confirmation Order ¶ oo. Currently, the Confirmation Order and Settlement Order are in full agreement. But if there were to be some inconsistency, the

Confirmation Order (and its approval of the Settlement) would control: "In the event of any inconsistency between . . . the Confirmation Order, on the one hand, and the FILO Settlement Order . . . on the other hand, the Confirmation Order shall control." *Id.* § LL. So even if Appellants were right (they are not) that the Settlement was a *sub rosa* plan when it was first approved, reversing that order now would not accomplish anything.

**B.      The Appeals from the Settlement Order Are Statutorily Moot**

These appeals are not only moot under Article III of the Constitution, they are also statutorily moot under section 363(m) of the Bankruptcy Code. Statutory mootness under 11 U.S.C. § 363(m) "limits the ability of appellate courts to review the sale of estate property when the order approving the transaction is not stayed." *New Indus., Inc. v. Sneed Shipbuliding, Inc.* (*In re Sneed Shipbuilding, Inc.*), 916 F.3d 405, 409 (5th Cir. 2019). "Section 363(m) provides that any appeal that seeks 'reversal or modification' of a bankruptcy sale is moot if the sale was not stayed pending appeal and the property was sold to a good faith purchaser." *SR Const., Inc. v. RE Palm Springs* (*In re Palm Springs II, L.L.C.*), 106 F.4th 406, 417 (5th Cir. 2024) (quotation omitted). As discussed *supra* pp. 4-5, the Settlement was a sale of property (mostly unliquidated litigation claims) to good-faith purchaser (to the Litigation Trust, of which the FILO Lenders are the priority beneficiaries). The Settlement Order was not stayed pending appeal. Accordingly, these appeals seeking reversal of the sale are statutorily moot.

Section 363(m) mootness applies to any order authorizing a sale of property "under subsection (b) or (c) of this section," that is, section 363 of the Bankruptcy Code. 11 U.S.C. § 363(m). The Settlement Order expressly transfers Debtors' assets to the Litigation Trust

11

under section 363(b). *See* Settlement Order ¶¶ 6, 42. The Settlement Order also expressly recognizes that a reversal on appeal, the remedy Appellants seek here, will have no effect on the transfer unless the order is stayed pending appeal: "The reversal or modification on appeal of this Order shall not affect the validity of the transfer of the Litigation Trust Assets to the Litigation Trust, unless the authorization to effectuate such transfer and such transfer are duly stayed pending such appeal. The Litigation Trust is entitled to all protections afforded by section 363(m) of the Bankruptcy Code." Settlement Order ¶ 23; *see also In re Boy Scouts of Am.*, 137 F.4th 126, 152 (3d Cir. 2025) (finding Section 363(m)'s requirement that "the appeal is from an authorization of a sale under § 363(b)" satisfied where the appealed order expressly authorized a sale "pursuant to section 363" (cleaned up) (citation omitted)). Moreover, Appellants did not object to any of the Bankruptcy Court's section 363(m) findings.

The Fifth Circuit has found similar sales statutorily moot under Section 363(m). In *Black v. Shor* (*In re BNP Petroleum Corp.*), 642 F. App'x 429 (5th Cir. 2016) a creditor agreed to purchase litigation claims from the Bankruptcy Trustee (acting for a Debtor). *Id.* at 431. In exchange, like here, the creditor would pay the Trustee a portion of the proceeds recovered from these claims. *Id.* at 432. Like here, this sale would also settle a claim by the creditor against the Trustee. *Id.* The Fifth Circuit held that an appeal of the bankruptcy court's order approving this sale was statutorily moot. *Id.* at 433-35. Like in *BNP Petroleum*, Debtors' sale of assets (including litigation claims) in this case cannot be reversed on appeal.

12

This sale is also similar to one the Fifth Circuit found moot in *SR Contr., Inc. v. Hall Palm Spring, L.L.C.* (*In re Palm Springs II, L.L.C.*), 65 F.4th 752 (5th Cir. 2023). There, a developer financed construction of a hotel through funds borrowed from a secured lender. *Id.* at 756. After the developer defaulted on the loan, the parties found "an alternative to foreclosure." *Id.* at 757. The developer transferred the property to a new company formed by the lender, which was to finish building the hotel. *Id.* These plans fell through and the new company filed for bankruptcy. The lender then acquired the property in a credit bid. *Id.* at 758. The Fifth Circuit held that an appeal of this sale was statutorily moot. *Id.* at 765. Here, the FILO Lenders agreed to release their claims against Debtors in exchange for the transfer of Debtors' assets to the Litigation Trust and the receipt of beneficial interests in the Trust.

## CONCLUSION

For the foregoing reasons, Debtors respectfully request the Court dismiss the Settlement Appeal as moot.

Dated: September 25, 2025
      Houston, Texas

 /s/ *Clifford W. Carlson*
WEIL, GOTSHAL & MANGES LLP
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Clifford.Carlson@weil.com


-and-

13

WEIL, GOTSHAL & MANGES LLP
Jeffrey D. Saferstein (*pro hac vice* forthcoming)
Gregory Silbert (*pro hac vice* forthcoming)
Robert S. Berezin (*pro hac vice* forthcoming)
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Email:   Jeffrey.Saferstein@weil.com
            Greg.Silbert@weil.com
            Robert.Berezin@weil.com

-and-

WEIL, GOTSHAL & MANGES LLP
David J. Cohen (*pro hac vice* forthcoming)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone:  (305) 577-3100
Facsimile:  (305) 374-7159
Email:   DavidJ.Cohen@weil.com

*Attorneys for Appellees*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with counsel for Appellants by email regarding the foregoing motion and understand that they oppose dismissal.

/s/   Clifford W. Carlson
Clifford W. Carlson

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Fed. R. Bankr. P. 8015(h) that the foregoing motion complies with the type-volume limitation of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the items exempted by Fed. R. Bankr. P. 8015(g), this document contains 3,000 words.

/s/   Clifford W. Carlson
Clifford W. Carlson

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2025 a true and correct copy of the foregoing was electronically served on all parties registered to receive electronic notice in this case pursuant to the Court's CM/ECF filing system.

/s/   Clifford W. Carlson
Clifford W. Carlson