# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| STEWARD HEALTH CARE | § | Lead Civil Action No. |
| SYSTEM LLC, *et al.*,[1] | § | 4:25-cv-02825 |
|     *Debtors/Appellees.* | § | |
| | § | Consolidated with: |
| THE COMMONWEALTH OF | § | 4:25-cv-02829 |
| MASSACHUSETTS, TRACO | § | 4:25-cv-02901 |
| INTERNATIONAL GROUP S. DE | § | |
| R.L., AND DR. MANISHA | § | Bankruptcy Case No. 24-90123 |
| PUROHIT, *et al.*, | § | |
|     *Appellants.* | § | |

## APPELLANTS' RESPONSE IN OPPOSITION TO
## APPELLEES' MOTION TO DISMISS APPEALS AS MOOT

---

[1]  A complete list of the 167 debtors in the underlying chapter 11 cases (the "Debtors" and "Appellees") may be obtained at https://restructuring.ra.kroll.com/Steward.

# <u>TABLE OF CONTENTS</u>

**Page**

Preliminary Statement........................................................................................1

Background ...........................................................................................................4

Argument & Authorities .....................................................................................9

   A. Species of Mootness .....................................................................................9

      1. Equitable (or Prudential) Mootness.........................................................9

      2. Constitutional (or Article III) Mootness................................................10

      3. Statutory (or Section 363(m)) Mootness...............................................10

   B. The Settlement Appeal Is Not Constitutionally Moot..................................11

      1. The Purported "Reapproval" of the Settlement Is Not Grounds for Dismissal; It Is Grounds for Consolidation...............................................11

      2. *In re Life Partners* Is Not Applicable....................................................14

   C. The Settlement Appeal Is Not Statutorily Moot...........................................15

Conclusion ..........................................................................................................16

4918-4486-6674

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Church of Scientology of California v. United States*,
  506 U.S. 9, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992) .......................................10

*In re Braniff Airways, Inc.*,
  700 F.2d 935 (5th Cir. 1983) ...............................................1, 2, 13, 16

*In re Hilal*,
  534 F.3d 498 (5th Cir. 2008) ...................................................................3

*In re Serta Simmons Bedding, L.L.C.*,
  125 F.4th 555 (5th Cir. 2024) ...................................................9, 10, 15

*In re Sullivan Century Plaza, I, Ltd.*,
  914 F.2d 731 (5th Cir. 1990) .................................................................10

*In re Torch Offshore, Inc.*,
  327 B.R. 254 (E.D. La. 2005) ...............................................................16

*In re Walker Cnty. Hosp. Corp.*,
  No. 4:20-CV-00911, 2020 WL 6482016 (S.D. Tex. Sept. 30, 2020)
  (Hanen, J.), *aff'd sub nom. Matter of Walker Cnty. Hosp. Corp.*, 3 F.4th
  229 (5th Cir. 2021)..............................................................................11

*In re Watch Ltd.*,
  295 F. Appx. 647 (5th Cir. 2008) .........................................................10

*Matter of Life Partners, Inc.*,
  708 F. Appx. 831 (5th Cir. 2017) ...............................................10, 14

*Matter of Sneed Shipbuilding, Inc.*,
  916 F.3d 405 (5th Cir. 2019) .......................................................11, 15

*MOAC Mall Holdings LLC, v. Transform Holdco LLC, et al.*,
  598 U.S. 288 (2023), 2022 WL 4080619 ...............................................3

4918-4486-6674

<u>Statutes and Codes</u>

United States Code

Title 11, Section 363(b) .........................................................................16

Title 11, Section 363(m) ...............................................................1, 3, 10, 15, 16

4918-4486-6674

TO THE HON. GEORGE C. HANKS, JR., UNITED STATES DISTRICT JUDGE:

The Commonwealth of Massachusetts ("<u>Massachusetts</u>" or the "<u>Commonwealth</u>"), TRACO International Group S. de R.L. ("<u>TRACO</u>"), and Drs. Manisha Purohit, Diane Paggioli, James Thomas, Thomas Ross, Michael Regan, Peter Lydon, Sridhar Ganda, A. Ana Beesen, Benoy Zachariah, Barry Arkin, Bruce Kriegel, Gary Miller, Jennifer Skolnick, Stephen McElroy, Robert Dart, Robert Lowenstein, and Irina Kogan for themselves and other participants in and beneficiaries of certain of the Debtors' deferred compensation plans (collectively, the "<u>Participants</u>" and, together with the Commonwealth and TRACO, the "<u>Appellants</u>"), by and through undersigned counsel, submit this response (the "<u>Response</u>") in opposition to *Appellees' Motion to Dismiss Appeals as Moot* [ECF No. 22] (the "<u>Motion</u>") and the *Declaration of Hugh M. McDonald in Support of the Response* (the "<u>McDonald Decl.</u>"), attached as **Exhibit A**.

## PRELIMINARY STATEMENT

A bankruptcy court order approving a settlement—even one bearing a section 363(m) badge—that (1) transfers all remaining estate assets to a liquidation trust, not a purchaser;[2] (2) locks in the financial terms for recoveries on the transferred assets,

---

[2] "Were this transaction approved, and considering the properties proposed to be transferred, little would remain save fixed based equipment and little prospect or occasion for further reorganization. These considerations reinforce our view that this is in fact a reorganization." *See In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983).

as between secured lenders and all other creditors;[3] (3) is not dependent on the confirmation of a plan; and (4) provides for non-consensual, unequal treatment of administrative expense creditors _must_ be subject to review.

Appellees argue that the settlement order from which this appeal was taken is constitutionally and statutorily (but not equitably) moot.  If the Debtors' mootness arguments prevail here, then the Debtors will have pioneered a procedure to implement a _sub rosa_ chapter 11 plan and insulate it from any appellate review.

By the Debtors' logic, whenever a bankruptcy court confirms a plan that implements terms of a previously approved settlement that preordained the fundamental terms of the plan then—the Debtors assert—the settlement is beyond review because Bankruptcy Court "reapproval" of the settlement renders any _sub rosa_ argument constitutionally moot, even though the common-sense and logical conclusion is that "reapproval" confirms the _sub rosa_ nature of the settlement itself because the _settlement terms could not be challenged during the confirmation process on account of the prior settlement order_.

Further, by the Debtors' reasoning, if the settlement is consummated and the bankruptcy and appellate courts deny a motion to stay the settlement order pending

---

[3]  "This provision . . . had the practical effect of dictating some of the terms of any future reorganization plan. . . . The debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan _sub rosa_ in connection with a sale of assets."  _In re Braniff_, 700 F.2d at 939-40.

appeal, then—the Debtors claim—section 363(m) of the Bankruptcy Code[4] also bars
review as statutorily moot, even though the trust to which the "assets" were
transferred was created as part of the settlement and does nothing more than oversee
litigations and implement distributions to all creditors.

These are examples of the "weaponize[ation] of mootness arguments"[5]
designed to prevent appellate review of bankruptcy court orders.  Worse still, these
arguments are employed where the settlement rendered the chapter 11 voting process
meaningless, calling into question the integrity of the entire process.[6]  These
arguments are also inconsistent with the ruling of the Bankruptcy Court[7] at
confirmation that the settlement "stand[s] on [its] own."[8]

---

[4]  Chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

[5]  "Because similar outcomes have become all too common, both scholars and courts now urge
restraint on theories that enlarge and 'weaponize' mootness arguments."  Brief of the Hon. Judith
Fitzgerald (Bankruptcy Judge, Ret.), *et al*., as Amici Curiae, in Support of the Petitioner, *MOAC
Mall Holdings LLC, v. Transform Holdco LLC, et al.*, 598 U.S. 288 (2023) (No. 21-1270), 2022
WL 4080619, at *5.  "The harm is evident: an erroneous ruling by a non-article III court is then
asserted to be immune from appellate review."  *Id.* at *6.  "This problem is exacerbated by the
similar extension of finding many transactions to be either § 363 'transfers' or somehow 'integral'
to a § 363 transfer—all in the name of invoking appellate immunity."  *Id.*

[6]  "[E]quity strongly supports appellate review of issues consequential to the integrity and
transparency of the Chapter 11 process."  *In re Hilal*, 534 F.3d 498, 500 (5th Cir. 2008).

[7]  The United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>").

[8]  *See* transcript of the hearing held by the Bankruptcy Court on July 16, 2025 (the "<u>Oral Ruling
on Confirmation</u>") at 9:10-18, 20:23-21:4; 47:25-48:1, attached to the McDonald Decl. as
**Exhibit 1**.  *See also* Section CC of the Plan (defined below) ("No reversal, stay, modification,
reconsideration, or vacatur of this Confirmation Order shall affect the enforceability of the FILO
Settlement Order.").

4918-4486-6674

## BACKGROUND

On April 28, 2025, the Debtors filed a Plan,[9] Disclosure Statement,[10] and Settlement Motion.[11]

The proposed Settlement[12] provided a framework for (1) the establishment of a Litigation Trust to receive and pursue the estates' remaining litigation claims; (2) an agreement by the FILO Lenders for use of cash collateral, including the use of up to $125 million in litigation funding (not new money but "recycled collections," *i.e.*, proceeds from receivables and collections that are otherwise subject to FILO Lenders' liens); and (3) a distribution waterfall for recoveries on the litigation claims

---

[9] *Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and Its Affiliated Debtors* [Bankr. ECF No. 4743]; the last pre-confirmation version was filed on July 11, 2025 [Bankr. ECF No. 5492]; and the operative version is attached as Exhibit A to the Confirmation Order (defined below) (as supplemented and amended, the "Plan").

[10] *Disclosure Statement for Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and Its Affiliated Debtors* [Bankr. ECF No. 4744]. The Debtors filed a revised version of the Disclosure Statement the day before the hearing on the Settlement Motion [Bankr. ECF No. 4986]. The final version of the Disclosure Statement was filed June 1, 2025 [Bankr. ECF No. 5028] (the "Disclosure Statement").

[11] *Motion of Debtors for Entry of an Order (I) Approving Settlement with FILO Secured Parties; (II) Authorizing and Directing Transfer of Assets in Connection Therewith; (III) Authorizing Amendment to FILO DIP Credit Agreement and Continued Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Approving Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; and (VI) Granting Related Relief* [Bankr. ECF No. 4746] (the "Settlement Motion").

[12] The "Settlement" means terms and conditions between the Debtors, FILO Secured Parties, and Creditors' Committee as set forth in the Settlement Term Sheet attached to the *Order (I) Approving Settlement with FILO Secured Parties; (II) Authorizing and Directing Transfer of Assets in Connection Therewith; (III) Authorizing Amendment to FILO DIP Credit Agreement and Continued Use of Cash Collateral; (IV) Granting Adequate Protection; (V) Approving Assumption and Assignment Procedures and Form and Manner of Notice of Assumption and Assignment; and (VI) Granting Related* Relief [Bankr. ECF No. 5035] (the "Settlement Order") as Exhibit 1. *See* Settlement Order [Bankr. ECF No. 5035 at 38-140 of 140].

whereby the FILO Lenders are repaid their secured claims (with interest, fees, and bonuses) ahead of any distribution to the estates for distribution to creditors.[13]  In short, the Plan is just the conduit for creditor distributions required by the settlement.

This link between the Settlement and the Plan is beyond dispute.  The Debtors themselves admit that "[t]he Plan incorporates the proposed Settlement by and between the Debtors, the Creditors' Committee, and the FILO Secured Parties . . . ."[14]  And, the Plan cannot go effective unless the trusts established by the Settlement and Plan collect enough to pay all allowed administrative expense and priority claims in full.[15]

On May 29, 2025, the Bankruptcy Court held a contested hearing on the Settlement Motion and Solicitation Motion.  On May 30, 2025, the Bankruptcy Court articulated the bases for its decision on the record and entered the Settlement Order.[16]

On June 13, 2025, the Commonwealth filed its *Notice of Appeal*[17] and an *Emergency Motion for Stay of Settlement Order Pending Appeal*.[18]  TRACO and the

---

[13]  Disclosure Statement [Bankr. ECF No. 5028 at 16-19 of 363].

[14]  Disclosure Statement [Bankr. ECF No. 5028 at 88 of 363].

[15]  Disclosure Statement [Bankr. ECF No. 5028 at 106-07 of 363].

[16]  *See* transcript of the hearing held by the Bankruptcy Court on May 30, 2025 (the "Oral Ruling on Settlement"), attached to the McDonald Decl. as **Exhibit 2**.

[17]  Bankr. ECF No. 5123.  On June 14, 2025, the Commonwealth filed its *Amended Notice of Appeal* [Bankr. ECF No. 5130].

[18]  Bankr. ECF No. 5126.

Participants also appealed the Settlement Order (collectively, the "<u>Settlement Appeal</u>")[19] and joined the motion in the Bankruptcy Court for a stay pending appeal.[20]

On June 23, 2025, the Bankruptcy Court denied the motion for a stay pending appeal without a hearing,[21] and the Commonwealth filed its *Emergency Motion for Stay Pending Appeal of Settlement Order* in this Court.[22]  On June 30, 2025, the Debtors filed an opposition to the motion for stay.[23]

The Disclosure Statement provided that the transfer of litigation claims from the estates to the Litigation Trust under the Settlement would occur whether or not the Bankruptcy Court confirmed the Plan.[24]  Nonetheless, the Debtors and the FILO lenders extended the effective date for the Settlement more than once to permit the

---

[19]  Bankr. ECF Nos. 5128, 5161.  The appeals of TRACO and the Participants were docketed in this Court as Civil Action Nos. 4:25-cv-2829 and 4:25-cv-2901.

[20]  Bankr. ECF Nos. 5162, 5171.

[21]  Bankr. ECF No. 5177.

[22]  ECF No. 4.

[23]  ECF No. 6.

[24]    On the earlier of (i) July 14, 2025 (the "<u>Outside Date</u>") and (ii) one (1) business day after the date on which the Bankruptcy Court enters an order of any confirmed plan pursuant to section 1129 of the Bankruptcy Code (the "<u>Litigation Trust Establishment Date</u>"), the Debtors shall transfer substantially all of the Debtors' assets, including valuable estate claims and causes of action (the "<u>Litigation Trust Assets</u>") to a trust (the "<u>Litigation Trust</u>").

Disclosure Statement [Bankr. ECF No. 5028 at 14-15 of 363] (bold definitions converted to underline).

4918-4486-6674

Bankruptcy Court to rule on confirmation.[25]   On July 14 and 15, 2025, the Bankruptcy Court held a contested confirmation hearing.

On July 16, 2025, the Bankruptcy Court articulated the bases for its decision on the record, noting some modifications to the Plan, including scheduling status conferences every six months for the Bankruptcy Court to assess progress on prosecution of the litigation claims and reconciliation of claims against the estates and to assess conversion to chapter 7.[26]

On July 25, 2025, the Bankruptcy Court entered the Confirmation Order[27] with the modified Plan that incorporates the Settlement attached as Exhibit A.   The Confirmation Order provides, among other things, that "[n]o reversal, stay, modification, reconsideration, or vacatur of this Confirmation Order shall affect the enforceability of the FILO Settlement Order."[28]   The Commonwealth, TRACO, the Participants, and the United States Trustee for Region 7 (the "UST") appealed the Confirmation Order (collectively, the "Confirmation Appeal").[29]

---

[25]   The Outside Date was originally July 8, 2015, which corresponded to the original setting for the Plan confirmation hearing.  *See* Settlement Motion [Bankr. ECF No. 4746 at 6 of 184].  The Outside Date was changed to July 14, 2025 in a revised proposed form of the Settlement Order after the confirmation hearing was reset to the following week.  *See* Bankr. ECF No. 5022-1.  After the Oral Ruling on Confirmation, the maturity date for the FILO Credit Agreement and the Litigation Trust Establishment date were extended to July 17, 2025.  *See* Bankr. ECF No. 5703.

[26]   Oral Ruling on Confirmation at 15:11-25.

[27]   *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming Joint Chapter 11 Plan of Liquidation of Steward Health Care System LLC and Its Affiliated Debtors* [Bankr. ECF No. 5774] (the "Confirmation Order").

[28]   Plan at Section CC [Bankr. ECF No. 5744 at 49 of 279].

[29]   Bankr. ECF Nos. 5852, 5854, 5858, 5875.

4918-4486-6674

On July 30, 2025, the Debtors filed an update notifying this Court of the July 14, 2025 consummation of the Settlement.[30]  On August 4, 2025, this Court denied Appellants' motion for a stay pending appeal of the Settlement Order "as moot" without specifying the type of mootness or addressing the merits.[31]

On August 19, 2025, Appellants filed an expedited unopposed motion to abate merits-briefing deadlines in these Appeals pending resolution of a forthcoming motion to consolidate the Settlement Appeal with the Confirmation Appeal and certify both for direct review by the United States Court of Appeals for the Fifth Circuit (the "Fifth Circuit") (the "Motion for Consolidation and Certification").[32] The Court abated deadlines the same day.[33]

On September 5, 2025, Appellants filed the Motion for Consolidation and Certification.[34]  On September 16, 2025, this Court entered a stipulation and order establishing and modifying deadlines relating to this Motion and the Motion for Consolidation and Certification.[35]  On September 25, 2025, Appellees filed this Motion and their opposition to the Motion for Consolidation and Certification.[36]

---

[30]  ECF No. 10.

[31]  ECF No. 11.

[32]  ECF No. 16.

[33]  ECF No. 19.

[34]  Civil Action No. 4:25-cv-03754, ECF No. 2.

[35]  Civil Action No. 4:25-cv-03754, ECF No. 10.

[36]  Civil Action No. 4:25-cv-03754, ECF No. 12.

4918-4486-6674

On October 6, 2025, this Court entered an order (1) granting the UST's motion for a stay of its appeal of the Confirmation Order until appropriations to the Department of Justice are restored and (2) applying that stay to any appeals consolidated with the UST's appeal.[37]

## ARGUMENT & AUTHORITIES

### A.    Species of Mootness

The Motion seeks dismissal based on constitutional and statutory mootness but not equitable mootness.

### 1.    Equitable (or Prudential) Mootness

Because the Motion does not contend that equitable mootness applies here, the Court need not analyze the traditional equitable mootness factors, including whether relief in this appeal might have "significant adverse consequences to the reorganization."[38]

---

[37]  Civil Action No. 4:25-cv-03755, ECF No. 6.

[38]      In assessing equitable mootness, we analyze three factors: "(i) whether a stay has been obtained, (ii) whether the plan has been 'substantially consummated,' and (iii) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *Highland Cap. Mgmt.*, 48 F.4th at 429 (citation omitted); *see also id.* at 430 ("[T]he inquiry turns on whether the court can craft relief for that claim that would not have significant adverse consequences to the reorganization.").

*In re Serta Simmons Bedding, L.L.C.*, 125 F.4th 555, 585 (5th Cir. 2024).

4918-4486-6674

### 2. Constitutional (or Article III) Mootness

The Fifth Circuit recently distinguished between the separate doctrines of constitutional and equitable mootness.

> At the threshold, we note that equitable mootness is a bit of a misnomer—much like green pastel redness.  Following Judge Easterbrook's lead, we differentiate between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the outcome (equitable mootness).  Real mootness implicates our jurisdiction under Article III.  Whereas equitable mootness is a judicial anomaly, a judge-created doctrine of pseudo-abstention that favors the finality of reorganizations and thus constrains our appellate review of plan confirmation orders.

*In re Serta*, 125 F.4th at 585 (quotations and citations omitted, emphasis in original).

An appeal is properly dismissed as constitutionally moot only when an appellate court lacks the power to provide an effective remedy for an appellant, even if the court were to find in the appellant's favor on the merits.  *In re Watch Ltd.*, 295 F. Appx. 647, 650 (5th Cir. 2008) (citing *In re Sullivan Century Plaza, I, Ltd.*, 914 F.2d 731, 735 (5th Cir. 1990)); *see also Matter of Life Partners, Inc.*, 708 F. Appx. 831, 835 (5th Cir. 2017) (quoting *Church of Scientology of California v. United States*, 506 U.S. 9, 12, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992) ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed.").

### 3. Statutory (or Section 363(m)) Mootness

Statutory mootness may apply to asset sales under section 363(m) of the Bankruptcy Code, which "sets out Congress' intent that authorized sales made in

good faith pursuant to §§ 363(b) or (c) should not be set aside unless a stay is entered."

*In re Walker Cnty. Hosp. Corp.*, No. 4:20-CV-00911, 2020 WL 6482016, at *8 (S.D. Tex. Sept. 30, 2020) (Hanen, J.), *aff'd sub nom. Matter of Walker Cnty. Hosp. Corp*., 3 F.4th 229 (5th Cir. 2021).

> The Fifth Circuit in *Sneed Shipbuilding* described § 363(m) as a limitation on appellate review in favor of finality. "Congress thought the trade was worth making to encourage *buyers* to come to the table ready to revitalize useful assets, as those *buyers* might otherwise stay away when a transaction remains shrouded in legal uncertainty. The Bankruptcy Code thus entrusts review of a sale solely to the bankruptcy court's in-the-moment judgment unless a stay is obtained that prevents the sale from closing prior to appellate review."

*Id.* (quoting *Matter of Sneed Shipbuilding, Inc.*, 916 F.3d 405, 410 (5th Cir. 2019)) (emphasis added).

### B.   The Settlement Appeal Is Not Constitutionally Moot

#### 1.   The Purported "Reapproval" of the Settlement Is Not Grounds for Dismissal; It Is Grounds for Consolidation

Appellees' argument that "if the Court vacated the Settlement Order, nothing would change because the Settlement is separately approved in the Confirmation Order"[39] only highlights the need for consolidation of the Settlement Appeal and Confirmation Appeal.  Consolidation would eliminate any ambiguities, prevent judicial inefficiencies, and resolve any concerns regarding integrity of the process.

---

[39]  Motion at 10.

11

The novel "reapproval" argument does not reflect the reality of the record. The record shows that the Settlement's terms were not subject to debate during the confirmation proceedings because of the prior Settlement Order.  Throughout the Oral Ruling on Confirmation, the Bankruptcy Court made clear that approval of the Settlement was to be evaluated separate from its confirmation of the Plan.

> I find that the FILO settlement -- I should say I found that the FILO settlement prevented an immediate, harmful conversion to Chapter 7 and was permitted under applicable law.  That ruling is under appeal, so I refer to it as background.  Nothing I say here should be construed as an attempt to add substance or comment on the appeal or my decision approving the FILO settlement.  There is a transcript of what I said and the reasons that I said it, and that -- those matters will be judged independently.

Oral Ruling on Confirmation at 9:10-18.

> Another point.  There are independent orders, a final DIP order, final settlement order.  Those stand on their own.  And so, if there are releases for parties in those documents, they stand on their own, and they will be enforced by this Court as a final order; or, if the final settlement gets appealed, then obviously not, but -- overturned.  But they will stand on their own as orders of the Court.

*Id.* at 20:23-21:4.

In fact, the Confirmation Order expressly states that "[n]o reversal, stay, modification, reconsideration, or vacatur of this Confirmation Order shall affect the enforceability of the FILO Settlement Order." [40]  By the Debtors' logic, the "reapproval" under the Confirmation Order would insulate the FILO Settlement

---

[40]  Plan at Section CC.

from appeal by mooting the appeal of the FILO Settlement Order while simultaneously providing that reversal of the Confirmation Order would have no effect on the FILO Settlement Order.  This cannot be the result.

Incorporating the terms of the Settlement into the Plan—and the resulting "reapproval" argument—also implicate the integrity of the confirmation process.  The "reapproval" argument is nothing more than an attempt to circumvent the *Braniff* decision.

By locking in the terms of Settlement through the Settlement Order and subsequently incorporating the Settlement Terms into the solicited Plan, the Debtors deprived creditors of the opportunity to vote on the Settlement Terms or challenge them during confirmation.  The Debtors' argument that "the terms of the Settlement *did* scale the hurdles of plan confirmation when it was approved in the Confirmation Order"[41] is fiction.  Even if the Bankruptcy Court had declined to confirm this Plan and creditors had voted against it, there could be no plan confirmed that fails to incorporate the Settlement.  The Settlement would dictate the treatment of their claims under any plan.

Furthermore, the continuing option to convert the case to chapter 7 underscores the point.  If the Settlement stands, a chapter 7 trustee would be substituted for the remaining estate to serve as the conduit for creditor distributions

---

[41]  Motion at 9 (emphasis in original).

pursuant to its terms, making clear that approval of the Settlement effectively disenfranchised creditors by making their votes illusory. This circular construct cannot deprive an appellate court from reviewing a fundamental question under the guise of constitutional mootness.

### 2. *In re Life Partners* **Is Not Applicable**

Debtors rely on a single, easily distinguishable case for the proposition that "[w]here, as here, a settlement is incorporated into a chapter 11 plan, appeals from the pre-plan settlement order can be rendered [constitutionally] moot."[42] That case is not applicable because the appellant failed to appeal the confirmation order.

> Because the confirmation order incorporated and implemented the Settlement Agreement, the Pillar Funds's claims were nullified when the bankruptcy court entered the confirmation order. The Pillar Funds concededly failed to appeal the bankruptcy court's confirmation order. "A timely notice of appeal is necessary to the exercise of appellate jurisdiction." *United States v. Truesdale*, 211 F.3d 898, 902 (5th Cir. 2000) (quoting *United States v. Cooper*, 135 F.3d 960, 961 (5th Cir. 1998)). As such, the court cannot grant any effectual relief to the Pillar Funds's appeal of only the Settlement Agreement.

*Matter of Life Partners*, 708 Fed. Appx. at 836.

In contrast, each of the Appellants appealed both the Settlement Order and the Confirmation Order, and both appeals are before this Court. Thus, the Court can grant appropriate relief, for example, requiring an administrative expense payment backstop or a mechanism to equalize payments to administrative expense creditors.

---

[42] Motion at 10.

This Court can do so in the Settlement Appeal, the Confirmation Appeal, or ideally in both, as a consolidated appeal.  Constitutional mootness does not apply here.

Furthermore, the parties to the Settlement cannot argue that "it is unfair for this court to [for example, alter the Settlement distribution waterfall to achieve compliance with the Bankruptcy Code requirements] now without letting them go back to the drawing board." *In re Serta*, 125 F.4th at 588.

> Such an aggressive position requires nothing less than a full-throated rebuttal.  If endorsed, the appellees' argument would effectively abolish appellate review of even clearly unlawful provisions in bankruptcy plans.  Parties supporting such provisions could always argue they would have done things differently if they had known the provisions would later be excised.  And if we cannot excise specific provisions but must let the parties go back to square one—which we cannot do without destroying the underlying Plan [or Settlement]—then the appellate courts are effectively stripped of their jurisdiction over bankruptcy appeals, despite Congress's clear intent to the contrary.  *See* 28 U.S.C. § 158(d) (providing for direct appellate jurisdiction over bankruptcy court final decisions, judgments, orders, and decrees).

*Id*. (excising unlawful indemnity provision despite equitable mootness argument).

## C.    The Settlement Appeal Is Not Statutorily Moot

The transfer of litigation claims from the estates to a Litigation Trust in exchange for beneficial interests in the Litigation Trust (something typically accomplished through a plan of liquidation) is not a sale to a *buyer* that the policies underlying section 363(m) were designed to protect.  *See, e.g., Matter of Sneed Shipbuilding*, 916 F.3d at 410.  To the contrary, in this case, it is a transfer by the

15

Debtors effectively to their own successors to implement creditor distributions under the Plan.

Regardless, the Settlement is not limited to the use, sale, or lease of estate property.

> *Braniff* requires review of agreements that do more than constitute the simple "use, sale or lease" of assets to ensure that they do not exceed § 363(b) and constitute *sub rosa* plans of reorganization. *See Matter of The Babcock & Wilcox Co.,* 250 F.3d 955, 960 (5th Cir.2001) ("*Braniff* stands merely for the proposition that the provisions of § 363 permitting a trustee to use, sell, or lease the assets do not allow a debtor to gut the bankruptcy estate before reorganization or to change the fundamental nature of the estate's assets in such a way that limits a future reorganization plan."); *see also* 3 *Collier on Bankruptcy* ¶ 363.02[4], at 363-20 (Lawrence P. King ed., 15th ed. 1996) ("Attempts to determine plan issues in connection with the sale [under § 363(b) ] will be improper and should result in a denial of the relief requested.")

*In re Torch Offshore, Inc.*, 327 B.R. 254, 259 (E.D. La. 2005).

The premise of the Settlement Appeal, consistent with *Braniff*, is that the Settlement is a *sub rosa* plan, not a sale. Until that premise is no longer subject to appellate review, applying section 363(m) to safeguard a purported 363(b) sale to block appellate review is a non sequitur.

## <u>CONCLUSION</u>

For the foregoing reasons, the Appeals are neither constitutionally moot nor statutorily moot, and the Motion should be denied. To conclude otherwise would insulate from appellate review whether the Settlement was an impermissible *sub rosa* plan that rendered voting on the Plan illusory.

16

Dated: October 14, 2025

Respectfully submitted,

**THE COMMONWEALTH OF MASSACHUSETTS**

By its attorney,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

By: */s/ Hugh M. McDonald*
Hugh M. McDonald (Bar No. NY2420974)
Special Assistant Attorney General
Andrew M. Troop (Bar No. MA547179)
Special Assistant Attorney General

PILLSBURY WINTHROP SHAW PITTMAN LLP

Andrew V. Alfano (Bar No. NY5525241)
31 West 52nd Street
New York, NY 10019
Tel: 212-858-1000
Fax: 212-858-1500

William D. Wood (Bar No. 21916500)
L. James Dickinson (Bar No. 24105805)
609 Main Street, Suite 2000
Houston, TX 77002
Tel: 713-276-7600
Fax: 713-276-7673

17

***TRACO INTERNATIONAL GROUP S. DE R.L.***

STEPTOE LLP

By: */s/ Timothy Walsh*
Timothy Walsh
Michele Jacobson
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 957-3085
Email: twwalsh@steptoe.com
          mjacobson@steptoe.com

18

*DR. MANISHA PUROHIT, ET AL.*

VERRILL DANA LLP

By: */s/ Robert J. Keach*
Robert J. Keach
Lindsay K. Milne
Letson D. Boots
One Portland Square, 10th Floor
Portland, ME 04101
Telephone: (207) 774-4000
Email: rkeach@verrill-law.com
        lmilne@verrill-law.com
        lboots@verrill-law.com

- and -

DIAMOND MCCARTHY, LLP

Allan B. Diamond, Esq.
Christopher D. Johnson, Esq.
909 Fannin Street, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Email: allan.diamond@diamondmccarthy.com
        chris.johnson@diamondmccarthy.com

4918-4486-6674

## CERTIFICATE OF COMPLIANCE

I certify that this Response complies with the type-volume limitation of FED. R. APP. P. 27(d)(2)(A) because it contains 4,260 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

I certify that this Response also complies with the typeface and style requirements of FED. R. APP. P. 27(d)(1)(E) and 32(a)(5) and (6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

*/s/ Hugh M. McDonald*
Hugh M. McDonald


## CERTIFICATE OF SERVICE

I certify that on October 14, 2025, I caused a copy of the foregoing Response to be served via the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

*/s/ Hugh M. McDonald*
Hugh M. McDonald

4918-4486-6674