**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § § § | **Chapter 11** |
| **STEWARD HEALTH CARE SYSTEM LLC,** *et al.,* | § § § § | **Case No. 24-90213 (CML)** **(Jointly Administered)** |
| Debtors and Appellees.[1] | § | |

| | | |
|---|---|---|
| **THE COMMONWEALTH OF MASSACHUSETTS, TRACO INTERNATIONAL GROUP S. DE R.L., AND DR. MANISHA PUROHIT,** *et al.,* | § § § § § § § | **Lead Case:** **Civil Action No. 25-cv-02825** **Consolidated with:** **Civil Action No. 25-cv-02829** **Civil Action No. 25-cv-02901** |
| Appellants. | § | |

| | | |
|---|---|---|
| **KEVIN M. EPSTEIN, THE UNITED STATES TRUSTEE FOR REGION 7,** | § § § § | **Civil Action No. 25-cv-03755** |
| Appellant. | § | |

| | | |
|---|---|---|
| **DR. MANISHA PUROHIT,** *et al.,* | § § § | **Civil Action No. 25-cv-03824** |
| Appellant. | § | |

| | | |
|---|---|---|
| **DR. MANISHA PUROHIT,** *et al.,* | § § § | **Civil Action No. 25-cv-03830** |
| Appellant. | § | |

**APPELLEES' RESPONSE IN OPPOSITION TO MOTIONS TO LIFT ABATEMENT OF MERITS BRIEFING**

Appellees respectfully submit this response in opposition to the UST's Motion

to Lift Abatement (Civ. No. 25-3755, ECF No. 22) ("UST Mot." or "UST Motion")

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these chapter 11 cases is: 2811 McKinney Avenue, Suite 300, Dallas, Texas 75204. The Plan Trust, the successor in interest to

and the Plan Participants' Motion for Relief from Abatement (Civ. No. 25-2825, ECF No. 30; Civ. No. 25-3824, ECF No. 16; Civ. No. 25-3830, ECF No. 18) ("Plan Participants' Mot." or "Plan Participants' Motion," and, together with the UST Motion, the "Motions").

## PRELIMINARY STATEMENT

The Motions ask the Court to undo a deliberate case-management decision only weeks after it was entered, based largely on an argument the Court already heard: the United States Trustee and the Plan Participants are not parties to the Commonwealth's mediation with Debtors, and their appeals may remain even if that mediation succeeds. After considering this argument, reviewing the mediator's May 26 report on the mediation between the Commonwealth and Debtors, and hearing all interested parties, the Court concluded by order on June 9 that the efficient course was to abate merits briefing, protect from disruption an active mediation that could narrow the case, and monitor progress through 45-day status reports. The June 9 order also preserved a safety valve for any appellant to seek relief. *See generally* Civ. No. 25-3755, ECF No. 21 (the "Abatement Order").

That measured approach was correct when the Court adopted it, and events since June 9 only reinforce its prudence. Without disclosing confidential substance,

---

Steward Health Care System LLC and its affiliated Debtors, was formed on August 27, 2025. *See* Bankr. Doc. No. 5955.  Corporate disclosure statements for each Debtor are attached as Exhibit 1.

2

Appellees can report that the parties to the mediation have exchanged constructive settlement offers and "that progress is in fact being made." *See* Civ. No. 25-3754, ECF No. 45 ("July 13 Status Report"). Briefing the remaining appeals now could only lead to inefficiencies. As the UST acknowledges, its and the Commonwealth's appeals "raise similar, overlapping issues." UST Mot. at 4. The Commonwealth would likely wish to participate in briefing in case the mediation fails. But that would divert resources from the mediation and risk undermining a resolution process that has been progressing well. Alternatively, if the Commonwealth chooses not to proceed with its appeal at such time, that would (if mediation fails) require the Commonwealth and Appellees to substantially duplicate work with a second set of briefs after the mediation. And the Appellees and another Appellant, TRACO, may soon be placed in the same position in light of the mediation between such parties expected to commence in late summer. The Court would also be burdened by this repetitive briefing and decision-making. Movants identify no concrete injury from preserving the short, monitored pause, which the equities clearly support.

## BACKGROUND

Steward filed chapter 11 in May 2024, and these appeals arise from four connected rulings: the orders approving the lender settlement, authorizing solicitation, confirming the plan, and denying dismissal or conversion. The Commonwealth, TRACO, and the Plan Participants appealed the Settlement Order;

3

the Commonwealth, the UST, TRACO, and the Plan Participants appealed the Confirmation Order; the UST belatedly also challenges the Solicitation Order.

At all stages, Appellants have marched together hand in hand. At Appellants' request, the Settlement Appeals were initially abated while they prepared a motion to consolidate all four sets of appeals and seek direct review. Civ. No. 25-2825, ECF Nos. 16, 19; Civ. No. 25-3754, ECF No. 2. The UST has acknowledged that the Confirmation Appeals present "similar, overlapping issues" arising from the same facts and agreed to consolidation. UST Mot. at 4. Appellants also repeatedly aligned or extended opening-brief deadlines so the appeals could proceed together. *See* Civ. No. 25-3754, ECF Nos. 16–17; Civ. No. 25-3755, ECF Nos. 11–14, 16.

On February 6, 2026, the Court appointed Judge Michelle Harner to mediate the Commonwealth's Settlement and Confirmation Appeals together with related claim disputes and litigation involving the Plan Trust, Litigation Trust, and Class A Trust Beneficiaries. Civ. No. 25-3754, ECF No. 24. On May 26, Judge Harner reported to the Court that every participant in the mediation was acting in good faith, responding to information and meeting requests, meeting regularly, and making progress toward a global resolution. She requested additional time to determine whether that resolution could be achieved. *Id.*, ECF No. 35.

At a status conference before the Court on May 27 to consider whether and how to proceed in these appeals, the Commonwealth explained that simultaneous

briefing would divert effort from mediation, and Appellees explained that briefing could waste resources and disrupt settlement. The UST made the objection it repeats now. The Court explained that it did not "want to do anything that would upset that status in mediation right now . . . for either side." Tr. 23:5–6. Accordingly, the Court abated merits briefing and deferred consideration of the consolidation/certification and mootness motions. Abatement Order at 4–6. In order to ensure efficiency and preparedness to resume the appeals if mediation fails, the Court also required status reports to be filed every 45 days, beginning July 13. *Id.* at 5.

The mediation has continued with Judge Harner's regular involvement and updates to the UCC so its participation may be facilitated as well. *See* July 13 Status Report at 1–2. Judge Harner explained in her most recent status report that the parties have "exchanged constructive settlement proposals" but concluded that "the Mediator believes that the parties need additional time in Massachusetts Mediation to reach their end objective or, alternatively, to determine that a global settlement is not possible." *Id.* at 2. On July 7, the Bankruptcy Court also authorized a mediation among the trusts, TRACO, the UCC, and Class A Trust Beneficiaries before the same Mediator to mediate disputes between the parties, including as it relates to TRACO's appeals pending before this Court. Bankr. ECF Nos. 6634, 6640; Adv. Proc. No. 24-03261, ECF No. 27.

## ARGUMENT

A district court has inherent authority to sequence related matters "with economy of time and effort for itself, for counsel, and for litigants," after weighing competing interests. *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936). The Court's temporary abatement saves far more than just ordinary litigation costs. The parallel briefing it avoids would disrupt the ongoing mediation with the Commonwealth and the forthcoming mediation with TRACO, and produce duplicative proceedings. The Abatement Order is a limited and monitored pause across interlocking appeals while a court-appointed mediator addresses disputes involving the same orders, record, parties, and economic interests.

Allowing only the UST and Plan Participants to proceed would be extremely inefficient; it would not simply siphon off a part of the case for certain appellants to continue to pursue. Both the Commonwealth and TRACO challenge principally the same orders as the other appellants, contest distribution of the same estate's assets, and are parties to the requested consolidation. They would have only two choices, both inefficient: (i) divert attention from mediation to protect their positions by participating in briefing if the abatement is lifted, or (ii) decline to participate in briefing and then later presenting overlapping arguments if mediation fails. Movants' suggestion that simultaneous briefing could aid mediation is speculative. It is far more likely that simultaneous briefing simply distracts from the mediation

and makes it more difficult. It is also distinctly possible that a resolution of appeals in favor of one party or another substantially alters the risk profile the mediating parties face and makes consensual resolution impossible. In any event, the speculation that simultaneous briefing would be helpful to mediation disregards the Court's well-founded contrary case-management judgment. The other possibility—duplicative briefing, where some Appellants file their briefs now and others later, leaving Appellees to respond to both sequentially—is also wasteful.

Moreover, it will also facilitate efficient and accurate judicial resolution of the issues for the Court to consider all briefs at once. If the Court can decide the Plan Participants' and UST's appeals with the benefit of the other Appellants' briefing as well, it will have the complete picture of all relevant arguments and the relationship among them. *See* Tr. 17:17–19 (The Commonwealth's concern that it may be "stuck" having "to unwind a Court's view" on a particular issue.). And oral argument would either occur twice or wait until all appeals are ready. Early briefing would create risks and paper, not progress. *See Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 243 (5th Cir. 2009) (condemning as "the height of judicial inefficiency" the prospect of multiple adjudications regarding the same transaction).

Substantial authority supports the Court's approach. *Landis* explained that a related proceeding can justify a stay even if it "may not settle every question of fact and law in" the stayed proceeding. 299 U.S. at 256. Similarly, in *In re Beebe*, which

the UST relies on to support its position, *see* UST Mot. at 9 n.4, the Fifth Circuit held that an initial stay was *justified* because a larger companion case involved similar issues; it became improper only after nearly two and one-half years without an endpoint or much supervision. No. 95-20244, 1995 WL 337666, at *3–5 (5th Cir. May 15, 1995). Here, the Court explained its reasoning for the initial stay, tied it to the mediation, required recurring reports, permitted targeted relief, and is now being asked to change course after approximately one month of productive mediation. *Beebe* confirms, rather than undermines, the propriety of the Court's present approach. And developments since the abatement was granted—namely, progress in the mediation, "constructive" settlement proposals, and potential involvement of the UCC—underscores the appropriateness of the Court's approach. *See* July 13 Status Report at 1–2.

Movants answer that the mediations will not eliminate every issue in their appeals. But *Landis* rejected a requirement of an all-or-nothing showing. *See* 299 U.S. at 254–56. And a settlement between Appellees and the Commonwealth may remove the Commonwealth as an appellant, narrow the issues the Court must rule on or change whether consolidation or direct certification remains useful.  A similar result could occur following the conclusion of the TRACO mediation. Those practical consequences would materially simplify the proceeding even if the UST or Plan Participants still brief certain issues. *See id.* Plan Participants' assertion that

their appellate matters are "wholly distinct" also conflicts with their own requests for consolidation and coordinated scheduling with the other Appellants. Plan Participants' Mot. at 6.

Nor does the Bankruptcy Code's policy favoring prompt resolution require the fastest first filing rather than the fastest coherent disposition. *See In re CPDC Inc.*, 221 F.3d 693, 700 (5th Cir. 2000); *see* Plan Participants' Mot. at 5–6 (citing *In re CPDC*). Rule 1001 of the Federal Rules of Bankruptcy Procedure mandates not just "speedy" resolution of matters, but also "just" and "inexpensive" resolution. Fed. R. Bankr. P. 1001(a). A brief pause that may eliminate major issues, avoid serial briefing and argument, and protect estate resources serves justice, the conservation of resources, and, ultimately, efficiency as well.

Neither the UST nor the Plan Participants cite any concrete prejudice arising from this short delay. The Motions identify no deadline or irreversible event requiring immediate briefing. The record is fixed, and no evidence is at risk. The UST's ability to argue the issues it refers to—including those related to administrative claims and nonconsensual releases—will be preserved. The public interest in faithful application of the Bankruptcy Code is not impaired by a short pause designed to produce orderly review. *Cf. Coker v. Select Energy Services, LLC*, 161 F. Supp. 3d 492, 495–96 (S.D. Tex. 2015) (Hanks, J.) (granting a limited-duration stay because it would cause little prejudice and promote judicial efficiency).

9

The Plan Participants' reliance on the appeals' age is likewise incomplete. Much of the elapsed time reflects coordinated extensions Appellants requested or accepted, including the original abatement and efforts to keep briefs on one schedule. The incremental delay from the June 9 order is measured in months, if not weeks, and relief remains available if circumstances change.

Finally, the stay is not indefinite within the meaning of the authorities cited by the UST, *see* UST Mot. at 8, which involved potentially years-long stays. *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983); *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982). The Court's abatement order requires reports every 45 days, reserves the Court's power to modify the schedule, and limits the duration of the stay to an easily identifiable period: the time in which mediation is progressing well and succeeds or ultimately fails. Abatement Order at 5–6. A stay order need not specify a particular date of expiration to avoid being "indefinite"; expiration can depend on the occurrence of some other event. As the Fifth Circuit has explained, "[t]here is nothing per se impermissible,[] . . . about staying a lawsuit until after another related action has been tried." *In re Beebe*, 1995 WL 337666, at *3.

Regardless, mediation is not expected to take years—or close to it. As Appellees explained in their status report, the mediation is expected to conclude by September 11. *See* July 13 Status Report at 2. And the parties to the TRACO

10

mediation intend to commence mediation in earnest upon approval of the intercircuit assignment. A supervised pause is not indefinite.

## CONCLUSION

The Court should deny the Motions and continue the Abatement Order.

Respectfully submitted,

*/s/ Clifford W. Carlson*
**WEIL, GOTSHAL & MANGES LLP**
Clifford W. Carlson (24090024)
Stephanie N. Morrison (24126930)
Austin B. Crabtree (24109763)
700 Louisiana Street, Suite 3700
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Email: Clifford.Carlson@weil.com
        Stephanie.Morrison@weil.com
        Austin.Crabtree@weil.com

-and-

**WEIL, GOTSHAL & MANGES LLP**
Jeffrey D. Saferstein
Gregory Silbert
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: Jeffrey.Saferstein@weil.com
        Greg.Silbert@weil.com

-and-

**WEIL, GOTSHAL & MANGES LLP**
David J. Cohen
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Facsimile: (305) 374-7159
Email: DavidJCohen@weil.com

*Attorneys for Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Fed. R. Bankr. P. 8015(h) that the foregoing motion complies with the type-volume limitation of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the items exempted by Fed. R. Bankr. P. 8015(g), this document contains 2,198 words.

/s/ *Clifford W. Carlson*
Clifford W. Carlson

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026 a true and correct copy of the foregoing was electronically served on all parties registered to receive electronic notice in this case pursuant to the Court's CM/ECF filing system.

/s/ *Clifford W. Carlson*
Clifford W. Carlson